Jefferson Trust and Savings Bank of Peoria, Appellant, v. W. Heller and Son, Inc., et al., Appellees.

Gen. No. 9,377.

October term, 1938. Heard in this court at the Opinion filed April 26, 1940. Rehearing denied June 18, 1940.

SHELTON F. McGRATH, THEODORE BAER and BARTLEY & YOUNGE, all of Peoria, for appellant.

KNOBLOCK & SLOAN, of Peoria, for appellees; JOHN F. SLOAN, JR., of counsel.

MR. JUSTICE DOVE delivered the opinion of the court.

On September 5, 1933, W. Heller & Son, a corporation, by I. M. Heller, its president, and Sam Heller, its secretary, executed its note payable to the order of Jefferson Trust and Savings Bank of Peoria for the sum of $17,261.87 due 90 days after date, with 7 per cent interest from date until paid. Payment of this note was guarantied by Rufus A. Heller, Sam Heller and Israel M. Heller, who executed a written guaranty and warrant of attorney authorizing a confession of judgment against them on the back of said note. On December 23, 1933, the circuit court of Peoria county rendered judgment by confession on this note against W. Heller & Son, Inc., Rufus A. Heller, Sam Heller and Israel M. Heller for $18,602.05. Subsequently a motion to open up the judgment and allow the defendants to plead was filed and from an order denying that motion the defendants appealed to this court, which reversed the order of the circuit court. *Jefferson Trust*

& Savings Bank v. W. Heller & Son, Inc., 280 Ill. App.
399. After the cause was redocketed in the trial court,
pleas were filed and after the issues had been made up
a jury trial was had, resulting in a finding and judg-
ment for the defendants, from which the plaintiff has
appealed.

From the pleadings and evidence it appears that
prior to the 5th day of February, 1931, the State Trust
and Savings Bank was a commercial bank organized
under the banking laws of this State and doing a gen-
eral banking business in the city of Peoria, with a
capital of $200,000. In this record this bank is re-
ferred to as the old bank and will be so called in this
opinion. On February 5, 1931, by order of the auditor
of public accounts, this bank, being insolvent, closed
and never thereafter reopened for business. At this
time its assets amounted to $1,864,210.10 and its de-
posits $1,371,111.74. W. Heller and Son is an Illinois
corporation, engaged in the junk and scrap iron busi-
ness in Peoria, with a capital stock of $50,000, which
in 1931 was owned by Israel M. Heller, Rufus A. Heller,
George Heller, brothers, and Esther Heller, the wife
of Sam Heller, another brother. Each of said stock-
holders owned 125 shares of the capital stock of said
corporation. Its board of directors was composed of
Israel M. Heller, Rufus A. Heller and George Heller.
Israel M. Heller was president, Rufus A. Heller, vice-
president, Sam Heller, secretary, and George Heller,
treasurer.

When the old bank closed 205 shares of its capital
stock stood in the name of Sam Heller on the books of
that bank, 50 shares of which belonged jointly to Sam
Heller and Harry A. Frankel. Albert H. Kahler was
also a stockholder in the old bank as was George A.
Shurtleff. These men, with others, in order to relieve
the stockholders of the old bank of their stockholders'
liability and to enable the depositors of the old bank
to be paid in full, organized a new bank known as the

Jefferson Trust and Savings Bank, appellant herein, and also the Peoria Investment Company, both Illinois corporations. The Investment Company had a capital of $200,000 and the stockholders of the old bank, in lieu of paying their stockholders' liability of $200,000, subscribed for an equal amount of stock in the Peoria Investment Company. Sam Heller, upon the organization of the Investment Company, subscribed for 155 shares of stock therein, and he testified that when he did so, Harry A. Frankel fully explained the plan to him, that he understood it perfectly and thought the purchase of stock in the Investment Company would be a good investment. He did not have, however, the necessary $15,500 cash to pay therefor and neither did some of the other stockholders of the old bank. According to Sam Heller's testimony Frankel told him that he could pay for it by executing his personal note, which would be accepted in lieu of cash and on October 17, 1931, Sam Heller executed a judgment note for $15,500, payable on demand to the order of John C. Wynd, trustee, said note bearing 6 per cent interest from date until paid. This note was executed by Heller to secure the other makers of the Causey and Kahler notes aggregating $33,500 hereinafter referred to.

On October 23, 1931, Sam Heller and nine other persons including Albert H. Kahler, George A. Shurtleff, Harry A. Frankel and John C. Wynd, who had subscribed for stock in the Peoria Investment Company, executed their note payable to the order of E. M. Kahler for $12,500 30 days after date and on the same day Albert H. Kahler, George A. Shurtleff, Harry A. Frankel, John C. Wynd, Chester Swords and Sam Heller executed their note for $21,000 payable 30 days after date to Florine Causey. It was for the makers of these Kahler and Causey notes that John C. Wynd, payee of the note of $15,500 executed by Sam Heller on October 17, 1931, acted as trustee. The proceeds of these Kahler and Causey notes aggregating $33,500

was paid to the Commercial-Merchants National Bank of Peoria and this bank, on October 28, 1931, acting as trustee for the stockholders of the Investment Company and having received the $200,000 from the sale of stock in the Investment Company credited the account of appellant with that sum. On the previous day appellant received its authority to open for business but did not do so until November 25, 1931. Under the provisions of the contract dated October 28, 1931, executed by the old bank and by the Investment Company and by appellant, objectionable assets of the old bank having a book value of $693,098.38 were transferred to the Investment Company in consideration of this $200,000 cash. The remaining assets of the old bank, amounting to $1,171,111.74 were acceptable assets both to the State auditor and to the directors of appellant so that when appellant opened for business it had this $200,000 cash received from the Investment Company, together with the approved assets of the old bank, amounting to $1,171,111.74, both aggregating $1,371,111.74, and it had, under the provisions of the contract, assumed all of the deposit liabilities of the old bank, aggregating $1,371,111.74.

After the appellant opened for business E. M. Kahler and Florine Causey sold these notes aggregating $33,500 to appellant, and on December 28, 1931 these notes then in the hands of appellant and belonging to it were paid in part by the transfer of the Heller note of October 17, 1931 for $15,500 by John Wynd, trustee, the payee therein, who indorsed it without recourse and delivered it to appellant, who accepted it and credited the proceeds thereof on the Kahler and Causey notes.

Sam Heller testified that six or seven days after October 17, 1931, Harry A. Frankel informed him that he was having some trouble handling Heller's personal note of $15,500 and requested him to get the Heller Corporation to sign it. Heller stated that the corpo-

ration had nothing to do with it, that the obligation was his personal one and declined. On November 3, 1931, Frankel, Shurtleff and Albert H. Kahler came to the office of W. Heller and Son and had with them the note Sam Heller had executed on October 17, 1931. On this occasion, according to Sam Heller's testimony, Frankel said "Now, Sam, you are holding the key to the combination. The bank can open up tomorrow if you will get the corporation signature on this note." To this Heller testified that he replied: "This is a personal matter between the bank and myself and to please keep the corporation out of it." Kahler then said: "There is no harm in doing it. It will just help open up the bank that much quicker. A personal note can not be considered bankable. At this time the bank examiners control the situation. We have to do as they say. When the bank opens up we will be the bosses of the situation, at which time you will get the corporation note back and we will take your personal note in exchange." In reply to a statement there made by Rufus Heller to the effect that Frankel, Shurtleff and Al Kahler were not going to get the Heller corporation to put its name upon this note, Harry Frankel said: "What I am asking the corporation to do has no meaning as far as the corporation is concerned. You are just accommodating the bank to help them open earlier. A personal note is not bankable, the corporation note, if you would sign it, and make it a corporation note would be bankable and let us open up the bank tomorrow, won't you help us along that way? If you will put the corporation name to this paper, I will sign it to show you that there is nothing wrong or no harm can be done and I will get Bob Silberstein to sign it. This note is an accommodation to the bank and you will never have to pay it. It will be exchanged just as soon as the bank opens up for a personal note signed by you (Sam Heller), I don't understand why you hesitate. You are among friends. You know you

have been taken care of before and you will be taken care of, as far as any trouble is concerned, in the future.'' Sam Heller thereupon told I. M. Heller that he didn't see how the company could go wrong in helping the bank to open and I. M. Heller wrote beneath the name Sam Heller appearing thereon the words: ''W. Heller and Son, by I. M. Heller, Pres.'' At the same place and immediately thereafter Harry A. Frankel placed his name on the back thereof as did also I. M. Heller, and thereafter Robert Silberstein placed his name on the back beneath I. M. Heller's name, doing so after he had been advised by Frankel that the purpose was to make the note bankable and that after the bank opened up and was out of the charge of the bank examiners it would accept a note signed by Sam Heller only. It was this note so signed originally by Sam Heller on October 17, 1931 and subsequently signed by the corporation and thereafter indorsed by Harry A. Frankel, I. M. Heller and Robert Silberstein that John C. Wynd, trustee, the payee therein, indorsed without recourse and delivered to appellant on December 28, 1931 and the proceeds thereof were credited by appellant on the E. M. Kahler and Florine Causey notes.

George A. Shurtleff, Albert H. Kahler and Harry A. Frankel were directors of appellant and interested in its organization and Albert H. Kahler was treasurer of the Investment Company. In March, 1932, appellant notified the makers of the $15,500 Heller note of October 17, 1931 that it held this note and that it was due. Rufus Heller and Sam Heller thereupon called at the bank and conferred with E. N. Batchelor, the then-cashier. In this controversialism they stated to the cashier that this note, so far as the corporation and indorsers were concerned, was an accommodation note and what Harry Frankel had told them. Mr. Batchelor advised them that Frankel had nothing to do with running the bank, that he, Batchelor, knew nothing about

any such an arrangement, that the bank had purchased the note for its full value on December 28th or 29th and expected to collect the note from the corporation and that he, Batchelor, wanted it determined then and there whether it had a good note or not and that if there was to be any question about it, the bank would put the note in judgment and let the court decide. Shortly thereafter Sam and Rufus Heller met Mr. Batchelor in Mr. Shurtleff's office and Shurtleff stated to them that he knew of no arrangement which had been made with the Hellers about substituting an individual note of Sam Heller for the corporation note. Mr. Shurtleff then advised the Hellers that the bank had instructed him, as its attorney, that it would not accept a renewal thereof but for him to take judgment on the note unless the Heller Company would execute a new note, furnish the bank with a corporate resolution, pledge to it the 155 shares of stock in the Investment Corporation and in addition place thereon an indorsement by some of the members of the firm. On March 14, 1932, a renewal note was executed by the corporation as sole maker and payment thereof was guaranteed by I. M. Heller, R. A. Heller and Sam Heller, and a resolution purporting to be executed by Sam Heller, secretary of the corporation, was furnished appellant. This resolution recited that at a meeting of the directors of W. Heller and Son held on March 14, 1932, a resolution was adopted authorizing Sam Heller as secretary of the corporation to execute the name of the corporation on certificate No. 133, evidencing that said corporation was the owner of 205 shares of the capital stock of the Peoria Investment Corporation and directing said Peoria Investment Corporation to issue in lieu thereof two certificates, one for 50 shares and one for 155 shares, that said certificate evidencing 50 shares be sold and the certificate for 155 shares be placed as collateral with appellant to secure the payment of the note executed that day by

the corporation in the sum of $15,786.75. Subsequently said certificate No. 133 was so indorsed by the corporation and two certificates isued in lieu thereof, and the one for 155 shares issued to the Heller corporation was indorsed in blank by I. M. Heller, its president, acting for and on behalf of said corporation, and by Sam Heller, its secretary, and this certificate was duly delivered to appellant and accepted by it as collateral security for the payment of the $15,786.75 note. Rufus Heller and Sam Heller testified that no such resolution was ever passed by the board of directors of the corporation while Sam Heller testified that he signed the resolution but that it didn't speak the truth. Frieda Courtney, a former employee of appellant, was called by appellees and testified that as she recalled either Mr. Kahler or Mr. Batchelor dictated the resolution to her in the bank and that she typed it, that she didn't see it signed by Sam Heller but knew that he did sign it. Mr. Batchelor and Mr. Kahler testified that they never dictated this resolution or had anything to do with it and didn't know who prepared it. Mr. Kahler testified that he never saw the resolution before the day he testified upon the trial of this case.

On June 12, 1932, the corporation by I. M. Heller, its president, and Sam Heller, its secretary, executed a second renewal note in the sum of $16,023.55, the payment of this note was guarantied on the back thereof by Sam Heller, R. A. Heller and I. M. Heller. The note was a collateral note and referred to the certificate for 155 shares of the capital stock of the Peoria Investment Company then standing on the books of that corporation in the name of the Heller Corporation and this certificate was indorsed in blank by the Heller Corporation, its name being signed by I. M. Heller, the president, and by Sam Heller, its secretary. There were subsequent renewals of this note at 90-day intervals and on September 5, 1933, the note upon which this suit is based was executed. Each and every re-

newal note was executed by the corporation as sole maker, by I. M. Heller, its president, and by Sam Heller, its secretary. Rufus Heller and Sam Heller each testified that each of these renewal notes including the note sued on were executed at appellant's banking house, and that prior to the execution of each of these notes they advised Mr. Batchelor, the cashier, that Frankel had promised them at the time the original $15,500 note was executed that the corporation note would be surrendered and that the bank would accept the individual note of Sam Heller. Mr. Batchelor testified that the Hellers never made any objection to the execution of any of these renewal notes except the first renewal in March, 1932 and that thereafter nothing was said about it. He further testified that the Hellers were not present in the bank when the note which forms the basis of this suit and which is dated September 5, 1933 was executed but that the renewal was effected by correspondence and this clearly appears from the letter from Mr. Batchelor to the Heller Company dated October 19, 1933 and the reply of that company dated October 20, 1933 and the letter of appellant to the Heller Company of October 21, 1933 with which the bank returned to the company the former note. While Sam Heller and Rufus Heller each testified that the Heller Company never had any interest in the stock of the old bank which stood on the books of that bank in the name of Sam Heller, it is apparent from a letter written to the old bank by Rufus A. Heller, acting for Sam Heller, on June 11, 1929 that 95 shares of the 205 shares of stock in the old bank which stood on the books of the old bank in the name of Sam Heller belonged to the Heller Corporation and dividends thereafter declared upon this stock were deposited to the credit of the Heller Corporation and the Heller Company used this stock to collateralize some of its loans with the Central National Bank and Trust Company of Peoria. The testimony of Sam Heller and Rufus

Heller to the effect that the $15,500 note was executed by the corporation as an accommodation note was contradicted by Albert H. Kahler and George Shurtleff. Harry Frankel was called as a witness by appellees but was not interrogated about this matter. The evidence is further that in March, 1932, when the first renewal note was executed, Rufus A. Heller offered to pay appellant $2,000 if it would accept a renewal note not bearing the signature of the Heller Company. Appellant declined to do so.

It is first contended by counsel for appellant that the evidence discloses that the bank became the holder of the original $15,500 note in due course and it was therefore not subject to the defense that it was merely an accommodation note executed by the Heller Company without consideration and upon the promise that it would be later returned to the company which would accept in lieu thereof the individual note of Sam Heller. In this connection counsel insist that even though Shurtleff, Frankel and Kahler were instrumental in procuring the note and that it was executed by the Heller Company without consideration, still this was not the knowledge of appellant even though they were directors of the bank inasmuch as they were part owners of the note at that time and at the time the bank purchased it and under the law their knowledge of defects therein is not imputable to appellant. The authorities are to the effect that where an officer of a corporation deals with it in his own interest, opposed to its interest he is held not to represent it in the transaction so as to charge it with the knowledge he may possess, but which he has not communicated to it and which it does not otherwise possess of facts derogatory to the title he conveys. *Seaverns v. Presbyterian Hospital,* 173 Ill. 414. In the instant case this $15,500 note when negotiated to appellant belonged to Shurtleff, Frankel, Kahler and the other makers of the E. M. Kahler and Florine Causey notes and under the fore-

going authority their knowledge that this note, so far as the Heller Company was concerned, was an accommodation one executed without consideration is not imputable to appellant. The record also sustains appellant's contention that when appellant became the owner of this note, it paid full value therefor. The remaining question then in order that appellant may be held to be a purchaser in due course is whether it purchased this note before or after maturity. The evidence is that this note was signed by Sam Heller individually on October 17, 1931 and that it was payable to John Wynd, trustee, on demand. It was thereafter and on December 2 or 3, 1931, executed by the Heller Company and its payment guarantied by others. It was purchased by appellant on either December 28 or 29, 1931. Therefore it was negotiated 56 or 57 days after its execution by the Heller Company.

Section 53 of the Negotiable Instruments Law [Ill. Rev. Stat. 1939, ch. 98, § 73; Jones Ill. Stats. Ann. 89.073] provides: "Where an instrument payable on demand is negotiated an unreasonable length of time after its issue, the holder is not deemed a holder in due course." Section 192 [Ill. Rev. Stat. 1939, ch. 98, § 215; Jones Ill. Stats. Ann. 89.215] of the same act provides: "In determining what is a 'reasonable time' or an 'unreasonable time,' regard is to be had to the nature of the instrument, the usage of trade or business (if any), with respect to such instruments, and the facts of the particular case." Counsel for appellant contend that the question of what constitutes an unreasonable time in such a case is a question of law for the court. Counsel for appellees insist that it is question of fact for the determination of the jury.

In 10 C. J. S. 797, it is stated that "a transferee who acquires a demand instrument within a reasonable time after issuance may be a holder in due course and conversely, a transferee who acquires a demand instrument an unreasonable length of time after issuance

occupies the position of a person to whom the note has been transferred after maturity and is not a holder in due course." In 8 C. J. 1070 it is said: "Commercial paper payable on demand is not presumptively dishonored until the lapse of a reasonable time after payment thereof may legally be demanded; and what shall be deemed a reasonable time is generally a question of law for the court, although it is sometimes held a question of fact. The better rule, however, would seem to be that it is a mixed question of law and fact."

In *Nagle v. J. L. Hanson Co.*, 262 Ill. App. 160, the note upon which suit was brought was dated August 15, 1927, and read: "ten days sight after date we promise to pay." The evidence was that the note was negotiated by the payee to the plaintiff the latter part of November, 1927. On January 8, 1928 the plaintiff, through her bank, presented the note to the defendant and demanded that it be paid 10 days thereafter. Payment being refused, suit was instituted and it was contended that the note being acquired by the plaintiff more than 10 days after its date, plaintiff acquired it long after it was due, and took it subject to all defenses but the court held that the note became due 10 days after it was presented to the maker for payment, provided the presentation for payment was made within a reasonable time after its date and that what was a reasonable time was a question of fact for the jury. Counsel for appellant insist that this is not a correct statement of the law and cite *Stewart v. Smith*, 28 Ill. 397. According to the opinion in that case the only question of real importance was whether the instrument declared on was a negotiable instrument under the statute as it then existed. The instrument was dated January 21, 1859, and indorsed January 26, 1859. The court held it was a negotiable instrument and said that it was only five days overdue when negotiated and that the question when a note, payable on demand, is to be deemed subject to every defense exist-

ing against it, is a question of law to be determined by the circumstances of each case and that a delay of five days in negotiating the note was not unreasonable nor was a delay of five months unreasonable in demanding payment.

After citing the section of the Negotiable Instruments Act which provides that where an instrument payable on demand is negotiated an unreasonable length of time after its issue, the holder is not deemed a holder in due course, the Supreme Court of Missouri, in *Franklin Bank v. St. Louis Car Co.*, 321 Mo. 199, 9 S. W. (2d) 901, 60 A. L. R. 639, said: "The question of what is an unreasonable length of time with respect to a demand note is a mixed question of law and fact, whether the circumstances show an unreasonable length of time is a question of fact to be found by the jury. Whether, if true, such circumstances amount to an unreasonable length of time is a question of law to be determined by the court. 8 C. J. 1070. We are not called upon to determine as a matter of law whether or not a demand was made within a reasonable time. That question was determined by the jury under instructions and by their verdict they found that a reasonable time had elapsed, thus finding that plaintiff was not a holder in due course." So in the instant case this question was properly submitted to the jury and under all the facts and circumstances as shown by this record we do not think that finding should be disturbed. *In re Philpott's Estate,* 169 Iowa 555, 151 N. W. 825, it was held that whether a demand note had been negotiated an unreasonable time after issue so that the holder was not one in due course, is a question for the jury. To the same effect is the holding of the Supreme Court of Connecticut in *Tomlinson Carriage Co. v. Kinsella,* 31 Conn. 268, where it is said: "We think we may well hesitate to follow the cases to the extravagant length of holding that a reasonable time is a question of law, depending on the particular circum-

stances of each case. If there is such a time, and it is a question of law . . . it would seem that it ought to be known to the courts; and yet no court to our knowledge has attempted to fix it or declare what it is. But if it is a question of fact, depending upon the agreement and understanding of the parties, it would seem that it should be determined, like all other facts, by a jury, or by the court, where the issue is closed to the court, the court finding it in this case simply as a fact.'' There is no precise time when as a matter of law a demand note should be deemed to be dishonored. Under the evidence found in this record, we are unable to say that the jury were not warranted in finding that a reasonable time had elapsed at the time appellant became the owner of the original note and therefore not a holder in due course. There was no error committed in refusing to direct a verdict on this ground.

It was the contention of appellees upon the trial that the stock in the old bank and the stock in the Investment Company was the sole property of Sam Heller and that the indebtedness created therefor was solely his individual indebtedness and that the Heller Company executed the original note and all renewals thereof as accommodation maker only, and that it had no interest in the old bank or the Investment Company. The evidence however is that when the old bank closed the Heller Company had on deposit therein $2,200. The evidence is further that certificates evidencing the ownership of 95 shares of the 205 shares of stock in the old bank which stood in the name of Sam Heller had been indorsed by him and the old bank was so advised by a letter from the company dated June 11, 1929. By this letter the company requested that checks for dividends should be made to the company. Inasmuch as no transfer of this stock of record was made, the dividend checks continued to go to Sam Heller but the evidence is that they were indorsed by the Heller Company and credited to its account. Furthermore

these certificates were, on or about December 20, 1929, hypothecated by the Heller Company to the Central National Bank and Trust Company as collateral security for a loan to it. The certificate of stock for 205 shares in the Investment Company was, as a matter of fact, originally issued to the Heller Company and by it indorsed and at the written request of the company a new certificate for 155 shares was issued by the Investment Company to the Heller Company and the president of that company, I. M. Heller, and its secretary Sam Heller indorsed it at the time the original note was first renewed on March 15, 1932. At that time it was lodged with appellant as collateral security for the payment of the renewal note and has continued to be held by appellant to secure the payment of each renewal note and was so held by appellant when the instant suit was commenced. Appellees' explanation as to why the company executed the several renewal notes and why they were personally indorsed by Rufus A., Sam and Israel M. Heller was that Mr. Batchelor insisted upon it and they feared a lawsuit. When the note upon which this suit was brought was executed, Sam Heller testified that Rufus and he went to the bank, saw Mr. Batchelor and asked him how long the corporation would have to keep up signing renewal notes; that Batchelor told them he couldn't release the corporation; that it was an affair in which Frankel was interested and that the bank was not going to become a party to it; that if there was any misunderstanding between Frankel and myself that then we should pay the note and sue Frankel. Sam Heller further testified: ''After that conversation we signed the note and I took the note down to our place of business to have I. M. Heller sign it. I believe I brought it back that same day, and received the canceled note. I personally took this note up and gave it to the bank and they gave me back the canceled note.'' Mr. Batchelor denied this conversation and testified that no

protests were ever made by the Hellers except at the time the first renewal note was executed in March, 1932 and that the transaction concerning the last renewal in October, 1933 was entirely by correspondence and the letters of Mr. Batchelor, the cashier of the bank, to the Heller Company of October 19 and 21, 1933 and the reply of the Heller Company inclosing the note sued on corroborate Mr. Batchelor and clearly indicate that Sam Heller was mistaken. We are unable to escape the conclusion that the testimony of Mr. Batchelor, when considered in connection with the documentary evidence found in this record, was entitled to great weight. Just why the note sued on was ever executed in view of Sam Heller's testimony as to what occurred when it was executed is difficult to understand unless when it was executed appellees intended it to be a valid obligation of the maker and the several indorsers.

Regardless of what the situation was when the original note was executed the evidence found in this record inclines us to the belief that the company, by executing the renewal note in March, 1932, waived any defense it might have had to the original note and that there was a consideration for its doing so. The renewal note was not made to the original payee, John C. Wynd, trustee, but to appellant, as were all subsequent renewal notes. Appellant concededly paid full value for the original note when it acquired it in December, 1931. When the note of March 14, 1932 was executed and the original note surrendered, Sam Heller did not execute it as principal obligor or comaker, but as guarantor only, and he so executed all subsequent renewals. Rufus A. Heller testified that when the first renewal note was executed on March 14, 1932, he advised appellant that if it would accept a note without the Heller Company being bound, he would pay the bank $2,000. Appellant refused. At this time Sam Heller was at least liable on the original note and ap-

pellant was entitled to have as security therefor 155 shares of stock of the Investment Company. The undisputed evidence is that rather than submit to litigation and have the question of the company's liability then determined, the note of March 14, 1932 was executed. The stock in the Investment Company was issued to the company and by it duly assigned and delivered to appellant. The obligation of the company was thereafter repeatedly recognized. The evidence discloses that the Heller Company was never misled by appellant but that appellees with full knowledge of all the facts relied upon as a defense to the original note, executed the several renewal notes.

In our opinion, while this record is not entirely free from error, there was no reversible error committed by the trial court in the admission or rejection of evidence or in the giving or refusing of instructions, but the verdict of the jury is against the manifest weight of the evidence and the motion of appellant for a new trial should have been granted.

The judgment of the circuit court will therefore be reversed and the cause remanded.

*Reversed and remanded.*