712

YAHN & McDONNELL, INC., a Pennsylvania corporation, Plaintiff,

v.

FARMERS BANK OF the STATE OF DELAWARE, a Delaware corporation, Defendant, Third-Party Plaintiff,

v.

DELAWARE CANDY & TOBACCO SERVICE, a Joint Venture, Paul E. Kessler, M. Binder & Company, Delmar Merchandise Sales Co., Joint Venturers, Delaware Retail Stores, Inc., a Delaware corporation, and Insurance Company of North America, a Pennsylvania corporation, Third-Party Defendants,

DELAWARE CANDY & TOBACCO SERVICE, a Joint Venture, and Delmar Merchandise Sales Co., Joint Venturer, Fourth-Party Plaintiffs,

v.

John M. GRAY, Fourth-Party Defendant,

DELAWARE CANDY & TOBACCO SERVICE, a Joint Venture, and Paul E. Kessler, A Joint Venturer, Fourth-Party Plaintiffs,

v.

John M. GRAY and David Cohen, Fourth-Party Defendants.

Civ. A. No. 78–361.

United States District Court, D. Delaware.

April 23, 1982.

George H. Seitz, III, of Prickett, Jones, Elliott, Kristol & Schnee, Wilmington, Del., for plaintiff.

Martin I. Lubaroff and Robert J. Katzenstein of Richards, Layton & Finger, Wilmington, Del., for defendant and third-party plaintiff.

David Roeberg of Roeberg & Associates and Richard W. Pell of Tybout, Redfearn, Casarino & Pell, Wilmington, Del., for third-party defendants.

Edward B. Maxwell, II, of Young, Conaway, Stargatt & Taylor, Wilmington, Del., for fourth-party plaintiffs.

L. Kent Wyatt, Aerenson, Balick & Ferrara, Wilmington, Del., for fourth-party defendants.

OPINION

STEEL, Senior District Judge:

Plaintiff, Yahn & McDonnell, is the holder of a negotiable certificate of deposit (CD), No. 4681, in the amount of $150,000, issued on July 12, 1976 by the defendant Farmers Bank of Delaware with maturity dated October 12, 1976. The CD is payable to the order of "Insurance Company of North America for Account of Delaware Candy and Tobacco Service" and on June 16, 1978, it was endorsed by Insurance Company of North America ("INA") to the order of plaintiff. On or about June 23, 1978, plaintiff presented the CD to defendant for payment. It was refused and the CD was dishonored.

Cross motions for summary judgment have been filed, each on the ground that there is no genuine issue of any material fact and that the respective moving parties are entitled to judgment as a matter of law.[1] The motion of plaintiff is more specific, alleging that it is entitled to judgment on the following questions:

(1) Farmers has no valid defense for payment pursuant to 6 Del.C. § 3–603;

(2) Yahn & McDonnell is a holder in due course;

(3) Farmers Bank is absolutely liable to Yahn & McDonnell for the face amount of the certificate of deposit pursuant to 6 Del.C. § 3–419.

The following facts are not in dispute and provide a background for the present controversy.

In 1976 the main business of Delaware Candy and Tobacco Service ("Delaware

1. There are ten parties to this action with numerous claims, cross claims and counterclaims. None is involved with respect to the cross motions for summary judgment except the plaintiff and defendant.

Candy") was cigarette sales. In order for Delaware Candy to buy cigarette tax stamps on credit from the State of Delaware it was required to post a surety bond with the State of Delaware. Delaware Candy procured a bond dated June 30, 1976, from INA and caused the same to be delivered to the State of Delaware. The bond provided that Delaware Candy, as principal, and INA, as surety, were bound unto the State of Delaware in the penal sum of $150,000. So far as presently important, the condition of the bond was that if Delaware Candy promptly paid the cigarette taxes imposed by the State of Delaware, the obligation was to be void, otherwise it was to remain in full force and effect. (Exh. B to Berger affidavit, Doc. 135).

On or about July 12, 1976, Delaware Candy purchased CD 4681 from defendant and caused it to be delivered to INA to be held by it under a collateral agreement of that date. The agreement provided that CD 4681 should be held by INA as collateral security to protect it against all damages which it might sustain by reason of having executed the bond dated June 30, 1976 in favor of the State of Delaware. The collateral agreement provided further that in case of the termination of the liability of INA on all bonds without loss or damage, CD 4681 would be returned to Delaware Candy. (Exh. 1, to Young Dep., Doc. 111). On October 12, 1976, the maturity date of CD 4681, the defendant "rolled it over" by applying it to the purchase of a new CD, 4718. The amount and terms of CD 4718 were the same as those of CD 4681 except that the issuance and maturity dates of 4718 were October 12, 1976 and November 11, 1976, respectively. (Exh. C, attached to Aff. of Poplos, Doc. 134).

Delaware Candy and plaintiff began doing business with each other in 1977. Plaintiff "serviced" Delaware Candy's wholesale business by assembling orders for Delaware Candy customers and preparing invoices. (Gray Dep. pp. 22–28, Doc. 129). Later, in December, 1977, Delaware Candy entered into an agreement with plaintiff under which plaintiff purchased Delaware Candy's wholesale inventory and Delaware Candy agreed to buy cigarettes from plaintiff. (Exh. 3 to Gray Dep., Doc. 129).

As time went on, Delaware Candy became more and more indebted to plaintiff. At plaintiff's insistence Delaware Candy entered into an agreement dated May 16, 1979, with plaintiff designated "Assignment." (Cohen Dep. Exh. 2, Doc. 133).[2] In it Delaware Candy acknowledged that CD 4681 was pledged with INA pursuant to the agreement dated July 12, 1976, as security for a surety bond issued by INA to the State of Delaware. It stated further that the surety bond was about to be terminated as a result of the termination of any liability or obligation by Delaware Candy to the State of Delaware to post such a bond. Anticipating this, the Assignment stated further that Delaware Candy assigned to plaintiff a security interest in CD 4681. As a result of erroneous information which had been given to Harvey Porter, the attorney for plaintiff, for which defendant had no responsibility, the Assignment described CD 4681 as having a maturity date of July 12, 1978, instead of its actual maturity date of October 12, 1976.

As Delaware Candy had expected when it executed the "Assignment" the State of Delaware wrote Delaware Candy and returned the bond which INA had issued, stating that the bond was being returned "since all cigarette taxes due from you have been paid, there is no longer a need for this bond." (Exh. A to Berger Aff., Doc. 135).

Thereafter, under the terms of the collateral agreement dated July 12, 1976, INA became obligated to return CD 4681 to Delaware Candy, since INA had no further obligation under its bond to the State of Delaware. Instead of doing this, on June 16, 1978, at the direction of Delaware Candy, INA caused CD 4681 to be delivered to plaintiff, endorsed by INA as follows:

> Full return of collateral in accord with assignment instructions, pay to the order of Yahn & McDonnell, Inc.

2. Attached as Exhibit A.

Insurance Company of North America

BY: s/ Walter G. Young
    Walter G. Young
    Secretary

On or about June 23, 1978, plaintiff presented CD 4681 to defendant for payment which defendant refused.

CD 4681 is a certificate of deposit and a negotiable instrument under the Delaware Uniform Commercial Code, 6 *Del.C.* § 3–104.

## Payment

Defendant contends that CD 4681 was paid when it was rolled over for CD 4718. When a roll over occurs the second instrument, here CD 4718, pays the first instrument, CD 4681. In the banking industry the roll over procedure is used to pay the first instrument. The affidavit of Poplos is to this effect (Doc. 134, ¶ 4) and is not disputed. The problem here arises because when CD 4681 was rolled over and CD 4718 was issued, CD 4681 was left in the possession of INA. On November 11, 1976, defendant paid CD 4718 by crediting the account of Delaware Candy at the bank.

Plaintiff argues that the roll over of CD 4681 did not result in payment for several reasons. First, that the CD itself stated that it is payable "only upon presentation and surrender of this certificate" (which was not done). Second, that under the Delaware Uniform Commercial Code, 6 *Del.C.* § 1–101 *et seq.*, a party is discharged only by payment to a "holder", § 3–603. A "holder" is a person in possession of the instrument, § 1–201(20).[3] Plaintiff argues that at the time of the roll over INA, and not Delaware Candy, was the "holder" of CD 4681. Third, it is not controverted that reasonable banking practice requires the surrender of a CD after it has been cashed or rolled over. In the instant case this had not occurred.

▮ Plaintiff's argument that the roll over did not constitute payment of CD 4681 is fallacious. If the defendant had refused to roll over CD 4681 in 1976 when Delaware Candy requested it, the refusal would have been justified for the reasons plaintiff has urged. Plaintiff, however, erroneously fails to attribute significance to the fact that the roll over in fact had been consummated. If Delaware Candy had not directed INA to deliver CD 4681 to plaintiff, INA would have returned it to Delaware Candy as the indemnity agreement between Delaware Candy and INA required. If thereafter plaintiff had brought suit against defendant on CD 4681, a defense of payment would have been sustained. Otherwise, the result would have been that Delaware Candy would be paid $300,000 when it had only deposited $150,000 with defendant. One payment of $150,000 would have occurred on November 11, 1976 when 4718 matured and a second payment of $150,000 would have occurred when CD 4681 was presented in the suppositious case. A Court would never countenance Delaware Candy being paid twice the amount it had deposited with defendant. The only reason for considering plaintiff as holding a different, more favorable position than that assumed by Delaware Candy in the hypothetical case would be if plaintiff enjoyed holder in due course status. Unless he did, he would have taken CD 4681 subject to the defense of payment. § 3–306(b).

## Holder in Due Course

Since defendant has established that the defense of payment exists plaintiff has the burden of establishing that he or some person under whom he claims is in all respects a holder in due course. § 3–307(3). If plaintiff is a holder in due course, plaintiff is free from the defense of payment. § 3–305(2). *See also* 3–602.

Section 3–302(1) defines a holder in due course as follows:

  (1) A holder in due course is a holder who takes the instrument

    (a) for value;

    (b) in good faith; and

    (c) without notice that it is overdue or has been dishonored or of any de-

---

**3.** An "instrument" means a negotiable instru-  ment. § 3–102(e).

fense against or claim to it on the part of any person.

Defendant asserts that plaintiff cannot be a holder in due course since he took CD 4681 with notice that it was overdue. CD 4681 recites that it was issued on July 12, 1976, and matured on October 12, 1976. Plaintiff first came into possession of CD 4681 on June 16, 1978, (Doc. 39, Ans. 111). It then had notice of the maturity date and had reason to know that it was overdue after October 12, 1976.

■ Defendant had no obligation prior to October 12, 1976, to pay the deposited funds or interest thereon to a holder. On October 12, 1976, a holder could demand payment of the principal and interest accrued prior to October 12, 1976. A purchaser of an instrument which is initially payable on demand has notice that it is overdue if he takes it more than a reasonable time after its issue. § 3–304(3)(c). CD 4681, of course, was not a demand instrument when it was issued. When it matured, however, it became the equivalent of a demand instrument, and the maturity date became the equivalent of the issuance date of a demand instrument. By analogy, just as a purchaser of a demand instrument is on notice that it is overdue if he takes it more than a reasonable time after its issuance, so plaintiff had notice that CD 4681 was overdue when he obtained possession of CD 4681 on June 16, 1978, more than twenty months after its maturity date. This was more than a reasonable time after its maturity date of October 12, 1976.

In *Easley v. East Tennessee National Bank*, 138 Tenn. 369, 198 S.W. 66 (1917) it was held that negotiation more than one year after date of a demand certificate of deposit would be an unreasonable length of time and a transferee would not be a holder in due course. In the case of demand notes periods of time considerably shorter than the twenty months here involved have been held unreasonable and, accordingly, the transferees were denied holders in due course status. *See, e.g., Trudeau v. Lussier*, 123 Vt. 358, 189 A.2d 529 (1963) (after indicating in dictum that the transfer of a demand note two months after issue would be unreasonable, the Court held that a transfer more than four years after issue was clearly unreasonable); *Jefferson Trust & Savings Bank v. W. Heller & Son*, 305 Ill.App. 644, 27 N.E.2d 844 (1940) (jury was warranted in finding a fifty-six to fifty-seven day period after issuance until transfer was unreasonable).

■ Because plaintiff acquired CD 4681 more than a reasonable time after its maturity date, it was not a holder in due course and was subject to the defense of payment.

■ Plaintiff argues that whether CD 4681 was overdue twenty months after its maturity date cannot be determined as a matter of law but is a jury question which depends upon the facts and circumstances. Plaintiff refers only to two circumstances which would cause a jury to find that plaintiff acquired the certificate a reasonable time after its issuance and therefore was not overdue at the time. Plaintiff points out that someone at INA had told Harvey Porter, plaintiff's attorney, that the CD was held by INA in its vault and that its issuance and maturity dates were July 12, 1976 and July 12, 1978, respectively. (Doc. 147, p. 13). These circumstances are irrelevant. These statements by INA were made shortly before May 16, 1978, when the "Assignment" was entered into between Delaware Candy and plaintiff. They did not justify plaintiff in closing its eyes to the actual maturity date of the certificate when it came into its possession on June 16, 1978. At that time plaintiff had "reason to know", in the words of Section 3–304(3), that the actual maturity date of the certificate was long since passed, actually by twenty months.

■ Under Section 3–201 the transfer of an instrument vests in the transferee such rights as the transferor had therein. Plaintiff argues that since INA was a holder in due course of CD 4681, plaintiff, as its transferee, had the same status. INA had no rights in the CD, however, when it was transferred to plaintiff. Those rights were extinguished when the principal obligation

which the CD secured (the cigarette bond) was discharged. A holder of an instrument securing another obligation is no longer a holder in due course once the other obligation has been paid. *Grooms v. Rice*, 163 Colo. 234, 429 P.2d 298, 300 (1976). In any case, INA assigned nothing to plaintiff since it had no rights to assign.

### Conversion

■ If the Court should determine that the defendant paid CD 4681 when it rolled over that certificate for CD 4718, then plaintiff argues that it is entitled to summary judgment for conversion of the certificate under Section 3–419. That section provides that an instrument is converted when it is paid on a forged endorsement and when that occurs the measure of the drawee's liability (here the defendant) is the face amount of the instrument, viz., $150,000. § 3–419(2). Plaintiff points out that if payment of the instrument was made to Delaware Candy by reason of the roll over, it was done without any endorsement by INA, despite the fact that the certificate by its terms was only payable to the order of INA, the payee. As a consequence, plaintiff argues that defendant paid Delaware Candy as a result of an "unauthorized endorsement." This, plaintiff argues, was the equivalent of a forgery.

This argument is subject to a simple answer. Assuming the facts on which the argument is premised are accepted, the only person who could have been injured was INA. INA sustained no injury as a result of the payment to Delaware Candy. INA had no rights under the certificate after all claims of the State of Delaware against Delaware Candy had been satisfied. It was after this that on June 6, 1978, the State of Delaware returned to Delaware Candy the INA surety bond. At that point any right which INA had under CD 4681 was ended.

INA endorsed the CD and delivered it to the plaintiff on June 23, 1978. At that time INA could not possibly have recovered against the defendant for the alleged earlier conversion based upon an alleged forgery. At that time it had sustained no injury as a result of the payment to Delaware Candy. As stated, plaintiff did not then have the status of a holder in due course, and in any event had no rights to assign to plaintiff.

### Negligence

Count III alleges that plaintiff was induced to acquire CD 4681 "in due course without notice of its infirmities" and to extend credit on the basis of the instrument in the sum of $152,108.33 plus interest from June 23, 1978. Paragraphs 9, 10, 11 and 12 are incorporated by reference in Count III. Plaintiff's claim that it was due to the negligence of defendant that the CD remained outstanding is based upon the allegations of paragraph 12. There the acts of negligence alleged are precisely the same as those which plaintiff unsuccessfully asserted to defeat the defense of payment. The only addition in paragraph 12 is that the defendant paid the CD 4681 to Delaware Candy, an unauthorized third party. This allegation is based upon the fact that INA was the payee of the CD, had not endorsed it, and had not been notified of its payment.

If defendant owed a duty of due care to anyone it was to INA. If this duty was breached, INA sustained no injury. At the time when it endorsed CD 4681 to plaintiff the INA surety bond had been satisfied and INA had no rights in the CD which could be assigned to plaintiff. As stated, plaintiff was not a holder in due course.

Defendant is entitled to summary judgment on the issue of negligence. Whatever factual controversies plaintiff relies upon are not material.

### Conclusion

No genuine controversy exists as to any material facts. The motion of plaintiff for summary judgment will be denied; that of the defendant will be granted.

### EXHIBIT A

### ASSIGNMENT

FOR VALUE RECEIVED, the undersigned, DELAWARE CANDY AND TOBACCO SERVICE, 500 Vandever Avenue, Wilmington, Delaware, a Joint Venture,

hereby assigns, transfers and sets over to YAHN & McDONNELL, INC., a Pennsylvania corporation (hereinafter called "Yahn"), for itself, its successors and assigns, the following negotiable Time Certificate of Deposit issued by Farmers Bank of the State of Delaware in the amount of ONE HUNDRED FIFTY THOUSAND ($150,000.00) DOLLARS and any renewals or replacements thereof (hereinafter called "TCDs"):

# 0004681

Date Issued—7/12/76

Amount—$150,000.00

Maturity Date—7/12/78

This Assignment is made and the TCD is to be held as collateral security for all and any existing or future liabilities of the undersigned to Yahn, of every nature whatsoever and out of whatever transactions arising.

The undersigned hereby authorizes Yahn, upon the maturity of the TCD or a default in payment of any of the liabilities referred to in the above paragraph, without notice to or consent of the undersigned to surrender the TCD for collection and withdraw the monies on deposit represented by TCDs pursuant to the terms of withdrawal to or on the account of the payment of such liabilities owed to Yahn by the undersigned. In the event the value of the TCD exceeds the amount of the indebtedness, Yahn shall deliver to the undersigned the excess of the value of the TCD over the indebtedness to Yahn. The undersigned hereby authorizes Farmers Bank of the State of Delaware, upon certification by Yahn as an agent of the undersigned, that indebtedness owed to Yahn and is due and payable as described in the preceding paragraph, to pay to Yahn monies on deposit with Farmers Bank represented by the above described TCD without notice or consent of the undersigned and without endorsement by the undersigned. In the event of any payment to Yahn of the above described TCD without the endorsement of the undersigned, the TCD shall be deemed for all purposes to have been endorsed by the undersigned.

The undersigned acknowledges that said TCD is pledged to the Insurance Company of North America (hereinafter called "INA") pursuant to a collateral agreement, Serial # 36521, dated July 12, 1976, a copy of which is attached hereto, as security for a surety bond issued by INA to the State of Delaware, Division of Revenue, which surety bond is about to be terminated as a result of the termination of any liability or obligation by the undersigned to the State of Delaware to post such a bond. The undersigned hereby authorizes and directs INA to deliver said TCD as described above, to Yahn without further notice or consent.

The undersigned hereby grants Yahn a security interest in and to said TCD and this Assignment and security interest shall be a continuing one and shall secure all the liabilities to Yahn by the undersigned regardless of how long before or after the date hereof such indebtedness was or may be incurred. This Assignment shall be binding on the undersigned, their executors, successors and assigns.

IN WITNESS WHEREOF, and intending to be legally bound hereby, the undersigned has set its hand and seal this 16th day of May, 1978.

DELAWARE CANDY AND TOBACCO SERVICE, A Joint Venture

Sworn to and subscribed before me this 16th day May, 1978.

s/ Illegible

BY: s/ John M. Gray V.P.

JOHN M. GRAY,
Vice President
(Authorized Signature)