Michael R. ROZEN, Appellant,

v.

NORTH CAROLINA NATIONAL
BANK, Appellee.

No. 77–1666.

United States Court of Appeals,
Fourth Circuit.

Argued April 6, 1978.

Decided Nov. 30, 1978.

James B. Craven, III, Durham, N. C. (Robinson O. Everett, Everett, Everett, Creech & Craven, Durham, N. C., on brief), for appellant.

John T. Allred, Charlotte, N. C. (Robert D. Dearborn, Moore & Van Allen, Charlotte, N. C., on brief), for appellee.

Before HAYNSWORTH, Chief Judge, and LAY * and RUSSELL, Circuit Judges.

HAYNSWORTH, Chief Judge:

This appeal comes to this court from a jury verdict against Michael Rozen, the plaintiff-appellant, who seeks the face value of a certificate of deposit.[1] Implicit in this general verdict was a finding that Mr. Rozen's claim fell outside the protective sweep of the U.C.C.'s "shelter principle." U.C.C. § 3–201(1). Rozen argues that the trial judge should have directed a verdict in Rozen's favor. We disagree and affirm.

The North Carolina National Bank had made a $500,000 long term loan to Sharpe Hosiery Mill. Later, its sole stockholder, Houston P. Sharpe, who was in financial difficulty, borrowed $301,000 from Allen Stein, a New York lawyer and investor. Contrary to the loan and guaranty agreement with the NCNB, Sharpe pledged all of the outstanding stock of Hosiery as collateral for the Stein loan.

On October 30, 1974, NCNB issued to Hosiery a $20,000 certificate of deposit. Thirteen days later, after Sharpe failed to meet his obligations on the Stein loan, Allen Stein sold the Hosiery stock at a foreclosure sale. The buyer was Melvin Stein, Allen Stein's brother.

NCNB called its loan to Hosiery the next day, setting off the $20,000 certificate of deposit issued to Hosiery and a checking account balance of $23,000 against the $180,000 remaining unpaid on the NCNB–Hosiery loan. The bank demanded return

* Honorable Donald P. Lay, United States Circuit Judge for the Eighth Circuit, Sitting by Designation.

1. Jurisdiction is founded on diversity of citizenship. By stipulation, the law of North Carolina, which has adopted the Uniform Commercial Code, controls.

of the certificate of deposit, but the Steins refused. On November 20, 1974, Allen Stein prepared a corporate resolution authorizing Melvin Stein to transfer the certificate of deposit on whatever terms he deemed advisable. Melvin endorsed the instrument over to Allen, who approached Manufacturers Hanover Bank and Trust. Manufacturers agreed to make a personal loan of $30,000 to Allen Stein. The $30,000 loan was secured by a $291,000 certificate of deposit issued by Manufacturers to Allen Stein and by the $20,000 NCNB certificate of deposit issued to Hosiery. Manufacturers' loan officer was shown a corporate resolution authorizing Melvin Stein to transfer the certificate of deposit, but was not informed of the NCNB set off.

Nine days later the NCNB certificate of deposit matured, and Manufacturers sent the certificate to NCNB for collection. Because of the previous set off, NCNB dishonored the certificate of deposit, wired notice of dishonor to Manufacturers and retained possession of the certificate.

Allen Stein then inquired of Manufacturers if it, upon repayment in full of the $30,000 loan, would assign its rights in the NCNB certificate of deposit to a third party upon Allen Stein's direction. Manufacturers, of course, agreed that it would. Thereupon, Allen Stein and his brother-in-law, the plaintiff Rozen, entered into an arrangement under which Rozen, using his own words, "knew [he] was buying a law suit." JAMET, a partnership consisting of the Stein brothers, their mother and their sister, lent Rozen $10,000. Rozen thereupon issued his personal check for $10,000 to the order of Manufacturers and delivered that check to Stein. Stein then delivered Rozen's $10,000 check and another check of his own for the balance due Manufacturers. Having been paid in full, Manufacturers then executed an assignment to Rozen of all of its right, title and interest in the NCNB certificate of deposit.

Rozen relies on the "shelter principle" embodied in U.C.C. § 3–201:

Transfer of an instrument vests in the transferee such rights as the transferor

has therein, except that a transferee who has himself been a party to any fraud or illegality affecting the instrument or who as a prior holder had notice of a defense or claim against it cannot improve his position by taking from a later holder in due course.

Rozen argues that Manufacturers enjoyed holder-in-due-course status and that, under § 3–201, Manufacturers transferred this protection to him along with its assignment of rights in the paper. Therefore, Rozen, argues, the trial judge should have directed a verdict in his favor, since a holder in due course takes an instrument free from "all claims to it on the part of any person . . . and . . . all defenses of any party to the instrument with whom the holder has not dealt." U.C.C. § 3–305.

The difficulty with this contention, however, is that the jury was thoroughly justified in finding that Rozen's assignor was Allen Stein, not Manufacturers. When the $30,000 loan was repaid, Manufacturers was obligated to return what collateral it had obtained from Allen Stein to him. When it got the money due it, it presumably returned to Allen Stein its own $291,000 certificate of deposit. It did not have possession of the NCNB certificate of deposit, but if it had had, it would also have returned that to Stein or to Stein's assignee. Without possession of the certificate itself, it could only execute a document purporting to be an assignment of its interest in the certificate to Stein or his assignee. By using Rozen's check for $10,000 payable to Manufacturers, there was an attempt to cast the transaction in the form of a purchase by Rozen for $10,000 of Manufacturers' interest in the NCNB $20,000 certificate of deposit, but Manufacturers had no right to sell collateral deposited with it by Allen Stein or any interest in such collateral. Its duty was to return all such collateral to Allen Stein, and it could transfer no interest in it to another except upon Allen Stein's direction. Clearly then, Rozen's assignor was Allen Stein, not Manufacturers, and Allen Stein was not a holder in due course.

■ Even if we should consider Manufacturers as being Rozen's assignor, however, it does not assist Rozen. The pledgee of a negotiable instrument may qualify as a holder in due course, U.C.C. § 3–302, Comment 4, but the pledgee's rights are limited by his secured creditor's status. *See* U.C.C. § 3–201, Comment 5.[2] A secured creditor's interest in collateral ceases when the debt is paid in full, *see* U.C.C. § 201(37), so whatever rights Manufacturers had as a holder in due course of the NCNB certificate were terminated when Allen Stein paid Manufacturers the money he owed. Thus at the time that Manufacturers executed the purported assignment to Rozen, the only rights it had in the NCNB certificate of deposit were those of a secured creditor which had been paid in full, and those rights are nothing.

■■ Because Stein was not a holder in due course, Rozen could not have become a holder in due course derivatively. *See* U.C.C. § 3–201. Not surprisingly, Rozen makes no claim of having independently acquired the status of a holder in due course. *See* U.C.C. § 3–302. Since he never had possession of the certificate of deposit, he never became a holder of any kind. *See* U.C.C. § 1–201(20).

■ The shelter principle seeks to ensure that a holder in due course always enjoys a ready market for the paper he owns. This principle applies with greatest vigor to holders of time instruments yet to come due for in such cases the holder cannot collect from the maker. If the holder needs immediate funds, he must turn to the market. If, however, notice of claims and defenses are widespread, free transfer will be inhibited. Thus, § 3–201 protects the transferee so as to create a market for the transferor.

In this case, however, Manufacturers never sought the benefits of § 3–201 for itself. Its $30,000 loan was more than abundantly secured by its own $291,000 certificate of deposit. For all that appears, it confidently expected Stein to repay the $30,000 and had no reason to believe that it would find it necessary to resort to the collateral. It presented the NCNB certificate of deposit only because the certificate had matured, and in that presentation it clearly was acting as agent for Allen Stein. The policy served by the shelter principle was simply not present here.

■ Moreover, the policy underlying the exception to the shelter principle counsels affirmance. The exclusion from the shelter principle of one who, having had notice of prior claims, takes back an instrument from a holder in due course rests upon sound principle and simple logic. Operation of the shelter principle in favor of such a person would defeat the purpose of subjecting him to defenses of the maker. Without the exception to the shelter principle, one not a holder in due course, by a transfer and an agreement to repurchase, could readily avoid the limitations under which he held the instrument in the first place.

Allen Stein in this instance sought to avoid the appearance of reacquisition by himself, but, as we have seen, Manufacturers' interest in the NCNB certificate of deposit terminated when Allen Stein repaid his debt and, if anything was transferred by Manufacturers' assignment to Rozen, Manufacturers was acting only upon the direction of Allen Stein, the real assignor.

Thus, the Code itself and significant policy considerations support the jury's finding and denial of the protection of the shelter principle to Rozen.

We can quickly dispose of the appellant's other arguments.

■ First, Rozen says that NCNB's set off was invalid. This argument must fail. NCNB set off the loan while Hosiery still owned the certificate of deposit, and mutuality of obligations existed. Given the total array of facts, particularly Houston Sharpe's transfer of the Hosiery stock,

---

**2.** A holder takes free of competing claims only to the extent that he is a holder in due course, *see* U.C.C. § 3–305, and defenses good against a pledgor remain available insofar as the pledgor retains an equity in the instrument. U.C.C. § 3–302, Comment 4.

NCNB had sufficient grounds for deeming itself insecure and calling the loan. Accordingly, the set off was proper.

Next, Rozen argues that Manufacturers was entitled to recover the face value of the certificate of deposit because NCNB converted the instrument. *See* U.C.C. § 3–419. To succeed on this theory, however, Rozen must demonstrate that he is subrogated to the rights of Manufacturers. As we have previously concluded, the jury could have found that such rights disappeared when Allen Stein paid off the loan. The jury could also have found that Manufacturers did not "demand," and that NCNB did not "refuse," payment of the certificate of deposit. *See* U.C.C. § 3–419.

Finally, Rozen alleges that the trial judge did not give proper instructions on the meaning of U.C.C. § 3–201 and § 3–304 (purchaser has notice of claim if he has knowledge that a fiduciary has negotiated instrument in breach of duty). Rozen failed to raise these objections in timely fashion, however, and this court cannot consider them. *See* Fed.R.Civ.P. 51.

AFFIRMED.