**104**

YAHN & McDONNELL, INC., a
Pennsylvania corporation

v.

FARMERS BANK OF the STATE OF
DELAWARE, a Delaware corporation;
Delaware Retail Stores, Inc.; Insurance
Company of North America; Delaware
Candy & Tobacco Service, a Joint Ven-
ture; and Paul E. Kessler, M. Binder &
Company, and Delmar Merchandise
Sales Co., Joint Venturers

v.

John M. GRAY, David Cohen, Fourth
Party Defendants.

Appeal of YAHN & McDONNELL, INC.

No. 82–1337.

United States Court of Appeals,
Third Circuit.

Argued Jan. 11, 1983.

Decided May 13, 1983.

George H. Seitz, III (argued), Prickett, Jones, Elliott, Kristol & Schnee, Wilmington, Del., for appellant Yahn & McDonnell, Inc.

Robert J. Katzenstein (argued), Martin I. Lubaroff, Richards, Layton & Finger, Wilmington, Del., for appellee Farmers Bank of the State of Del.

Before WEIS, SLOVITER and BECKER, Circuit Judges.

## OPINION OF THE COURT

WEIS, Circuit Judge.

In this diversity case, the district court held that the defendant bank properly refused to pay on its negotiable certificate of deposit presented by an indorsee. The court reasoned that because the holder had acquired the certificate after its maturity date, the bank's asserted defense of its prior payment to the depositor was valid. We conclude that in view of the specialized nature of a certificate of deposit whether the indorsee was a holder in due course depends upon unresolved factual issues. Moreover, since the payee clause of the original certificate did not include the depositor, credit to its account did not constitute payment by the bank on the original instrument. We hold also that in the circumstances of this case a negligence action is not foreclosed by the provisions of the Uniform Commercial Code. Accordingly, the judgment in favor of the defendant will be vacated and the case remanded to the district court.

Plaintiff's complaint against the bank alleged that it had wrongfully dishonored its certificate of deposit. Other parties were joined on related issues and a number of cross-claims were filed. The district court granted summary judgment in favor of the bank and, thereafter on stipulation of the parties, entered final judgment dismissing all remaining claims.[1]

Plaintiff Yahn & McDonnell sold merchandise to Delaware Candy & Tobacco Service for a period of time and, when Candy's credit became extended, requested security to protect the account. On May 16, 1978, Candy and plaintiff entered into an agreement designated "Assignment" that transferred to Yahn Candy's right to receive a negotiable certificate of deposit in the amount of $150,000 issued by defendant, Farmers Bank of the State of Delaware. The agreement recited that the instrument's maturity date was July 12, 1978, although, unknown to plaintiff, the certificate bore a maturity date of October 12, 1976.

At the time the agreement was executed, the certificate was in the possession of the Insurance Company of North America as collateral for a surety bond previously issued by INA on behalf of Candy. Plaintiff and Candy expected that the surety bond would be cancelled soon after the assign-

1. The district court's opinion is published at 538 F.Supp. 712 (D.Del.1982).

ment thereby making the certificate of deposit available for the transfer. Those events came to pass and, on June 16, 1978, at Candy's direction the certificate was indorsed by INA as follows: "Full return of collateral in accord with assignment instructions, pay to the order of Yahn & McDonnell, Inc.; Insurance Company of North America; By: S/Walter G. Young; Walter G. Young; Secretary."

Plaintiff presented the certificate to Farmers Bank, which dishonored it on June 23, 1978, asserting payment had been made in 1976.

The pertinent history of the certificate of deposit in question, Number 4681, begins on July 12, 1976, when it was issued at the request of Candy for use as collateral. At the instruction of INA, the certificate was made "payable to the order of Insurance Company of North America for account of Delaware Candy and Tobacco Service." Interest was payable for 92 days after the issue date until maturity on October 12, 1976. The certificate recited that it was payable "only upon presentation and surrender of this certificate" and that "[n]either the deposit nor the interest may be withdrawn prior to maturity." The instrument was then delivered to INA and remained in its vault until transferred to plaintiff in June 1978.

Although certificate Number 4681 was payable only upon presentation and surrender, the bank purported to "rollover"[2] the certificate by issuing a new one dated October 12, 1976. The new certificate, bearing Number 4718, was issued in the same amount and to the same payee as certificate Number 4681, and matured on November 11, 1976. This new certificate was apparently delivered to Candy but the first one

remained in the possession of INA. Despite the fact that the payee on the new certificate was the same as that on the original, and that the original certificate remained in INA's vault, the bank on November 11, 1976 paid the second certificate by crediting Candy's account for $150,000, plus accrued interest. The bank was subsequently unable to offer an explanation for its action in paying Candy.

On cross-motions for summary judgment, the district court determined that the "rollover" in 1976 constituted a payment on the original certificate and the bank, therefore, would not be required to pay twice unless the plaintiff was a holder in due course. That status was denied because when plaintiff took possession in June 1978, it then acquired notice that the certificate was "overdue" because the instrument recited a maturity date of October 12, 1976. The court also held that for notice purposes the twenty-month interval between the rollover and transfer constituted "more than a reasonable time" after the maturity date. The plaintiff's contention that payment of the certificate by means of a rollover constituted a conversion under section 3–419(1) of the Uniform Commercial Code was rejected. Finally, the court concluded that plaintiff had no cause of action in negligence against the bank because if there were a duty of due care, it was owed only to the INA which had suffered no loss.

On appeal, plaintiff disputes each of the four conclusions reached by the district court.

## I. HOLDER IN DUE COURSE STATUS[3]

The district court held that plaintiff was not a holder in due course because it took

---

2. "Rollover" is a standard banking practice through which a new certificate of deposit is purchased with the proceeds of a mature, existing certificate. The new certificate is generally considered to be payment of the old one.

The same terminology is applied to a non-negotiable certificate but it should be observed that this opinion addresses only a negotiable certificate of deposit and not the non-negotiable ones often issued by banks.

3. Delaware has adopted the Uniform Commercial Code, Del.Code Ann. tit. 6, subtitle I. It was applied by the district court and relied upon by the parties before us. We will refer hereafter to the Delaware provisions only by section numbers.

Throughout this opinion, we cite as authority a number of cases which predate the Code. Such citations are used, however, only when the Code cannot be viewed as supplanting the holding or rationale of those decisions.

the instrument with notice that it was overdue.[4] The court based its holding on two grounds. The first was that plaintiff came into possession of the certificate in June 1978, more than twenty months after the October 12, 1976 maturity date of the instrument. The court stated that in June 1978, plaintiff "had notice of the maturity date and had reason to know that [the certificate] was overdue."[5] 538 F.Supp. at 716.

In reaching its conclusion, the court held that a certificate of deposit is overdue once it matures. Such a characterization may be accurate as to some negotiable instruments, but the district court failed to consider whether there is a difference between certificates of deposit and other negotiable instruments. Such a distinction has been recognized, for example, in the application of the statute of limitations.

A long line of authority holds that for the purpose of determining when the limitations period begins to run, a certificate of deposit, in contrast to a simple promissory note, is not considered due until a demand for payment has been made. *See, e.g., Whitlock v. Bank of Maryville,* 612 S.W.2d 481 (Tenn.Ct.App.1980); *In re Gardner's Estate,* 228 Pa. 282, 77 A. 509 (1910) (cited with approval in Delaware Study Comment to § 3–122; *see generally* Annot., 23 A.L.R. 7 (1923), *supplemented by,* Annot., 128 A.L.R. 157 (1940). Delaware law has adopted this position through section 3–122, which provides that a cause of action "against the obligor of a demand or time certificate of deposit *accrues upon demand.*" (Emphasis added.)

The principle that a certificate of deposit is not due until demand has also been applied in cases involving holders in due course where the issue is whether the holder took a demand certificate without

notice that it was overdue. *See National Surety Co. v. Allen,* 243 Mass. 218, 137 N.E. 533 (1922). In the case at hand, determination of whether the mere passage of the payable date of the certificate makes the instrument overdue requires examination of considerations overlooked by the trial court. The Delaware distinction between certificates of deposit and other negotiable instruments with respect to the statute of limitations is a significant factor which should be reviewed together with the commercial understanding on the use of time certificates of deposit. Entry of summary judgment based only on the payable date was error.

As the second basis for holding plaintiff had notice that the instrument was overdue, the district court reasoned that once the certificate matured, it became the equivalent of a demand instrument and thus subject to section 3–304(3)(c). That subsection provides that a purchaser has notice that an instrument is overdue "if he has reason to know . . . that he is taking a demand instrument . . . more than a reasonable length of time after its issue."

In determining as a matter of law that the twenty-month period here was unreasonable, the court relied upon the pre-Code case of *Easley v. East Tennessee National Bank,* 138 Tenn. 369, 198 S.W. 66 (1917), which held that negotiating a demand certificate of deposit more than a year after issuance constituted an unreasonable length of time.

The circumstances in *Easley,* however, must be taken into account. There, the certificate represented the savings of a decedent who apparently lost or mislaid the document. When the widow sought to recover the money from the bank, it declined to pay until she could furnish an indemnity

---

4. Section 3–302(1) defines a holder in due course "as a holder who takes the instrument (a) for value; and (b) in good faith; and (c) without notice that it is overdue. . . ." There is no contention on this appeal that plaintiff fails to meet requirements (a) and (b). However, it should be understood that our discussion of whether plaintiff is a holder in due course is

limited to the facts which we recite and the facts and issues upon which the district court based its summary judgment.

5. A person has notice of a fact when "from all the facts and circumstances known to him at the time in question he has reason to know that it exists." § 1–201(25)(c).

bond, a condition she could not meet.[6] The widow argued, and the court agreed, that if someone else had acquired the instrument, he could not be a holder in due course free of defenses because negotiation would not have occurred in a reasonable time after issue. The court's decision, therefore, was necessary to protect the bank so that the widow could recover the funds unquestionably due her.

The Tennessee court reasoned that the purpose of a time deposit "ordinarily is to procure interest on the money deposited." Since, by the terms of the instrument, interest stopped accruing twelve months after issuance, and since demand certificates are "[u]sually" renewed after the cessation of interest, the court concluded that one could not take the instrument after this period and still assert holder in due course status.

However, a more recent decision from Tennessee describes the difference between a certificate of deposit and a demand note, and recites purposes other than the earning of interest which induce bank deposits. The court in *Whitlock v. Bank of Maryville,* 612 S.W.2d 481 (Tenn.Ct.App.1980), recognized that a deposit is a transaction peculiar to the banking business and a certificate is distinct from a promissory note.

Bank deposits are not merely loans. "The primary purpose of a general deposit is to protect the fund, and some of the incidental purposes thereof are the convenience of checking and transacting large business interests without keeping and handling large sums of money." *Id.* at 484 (quoting *Elliott v. Capital City State Bank,* 128 Iowa 275, 103 N.W. 777, 778 (1905)); *see also State v. Northwestern National Bank of Minneapolis,* 219 Minn. 471, 18 N.W.2d 569, 579 (1945) ("Deposit is a transaction peculiar to the business of banking.... [B]ank is not required to hunt up depositor and pay him ... as an ordinary lender is bound to do with his creditor.").

The Code has also acknowledged the unique characteristics of certificates of de-

posit and has made special provisions for them. For example, in defining the accrual of a cause of action against the maker, the action on a demand note accrues "upon its date, or if no date is stated, on the date of issue," and "in the case of a time instrument on the day after maturity." § 3–122(1). As noted previously, however, section 3–122(2) specifically singles out certificates of deposit and states that the cause of action "of a demand or time certificate of deposit accrues upon demand."

The Official Comment of this Code section explains the reason for the distinction. Unlike demand notes, which do not require presentment to charge the maker, banking custom and expectation is that "demand will be made before liability is incurred by the bank" on a certificate of deposit. An "additional reason [is] that such certificates are issued with the understanding that they will be held for a considerable time which in many instances exceeds the period of the statute of limitations." Unif. Commercial Code § 3–122 Official Comment 1, 2 U.L.A. 120 (1977).

The Delaware Study Comment to section 3–122 adds that "[t]his rule recognizes that while certificates of deposit constitute negotiable instruments, depositors are nevertheless inclined to think of them merely as receipts for money deposited in a savings account." *Cf.* § 8–305, Delaware Study Comment (1975) (corporate debentures and other investment securities, unlike drafts or checks, are not ordinarily intended for immediate liquidation).

In this case, no analysis of the circumstances surrounding the issuance and acquisition of the certificate was used to substantiate the conclusion that the time lapse was unreasonable as a matter of law. We conclude that the district court should have examined such circumstances as the nature of the instrument, trade usage and custom, the use of the certificate as collateral for an obligation of somewhat indefinite duration, statements made by Candy or INA to plain-

---

**6.** The problem faced by the *Easley* court is now covered by Section 3–804 of the U.C.C. which provides a method for recovery when an instru-

ment is lost. The form and extent of indemnification is generally a matter for the court's discretion.

tiff about the certificate, the fact that the instrument bore interest only until October 1976, and INA's retention of the document as late as June 1978 with no apparent concern for whether interest accrued. *See Jennings v. Imperial Bank,* 87 Cal.App.3d 896, 152 Cal.Rptr. 15 (1978) ("maturity" of certificate of deposit relates only to the question of interest); *Easley,* 138 Tenn. at 371, 198 S.W. at 67; §§ 1–204(2), 3–503(2); Annot., 10 A.L.R.3d 1199 (1966); *see also National Mechanics Bank v. Schmelz National Bank,* 136 Va. 33, 116 S.E. 380, 382 (1923) (certified check held pending performance of contract and negotiated immediately after performance was not negotiated an unreasonable length of time after issue).

To the extent that the record does not contain adequate evidence to properly evaluate these factors, supplementation may be necessary. This is particularly true of trade usage and custom with respect to certificates of deposit since the Code's specific reference to certificates is limited.

Section 3–304(3)(c), applicable to demand instruments, provides that a purchaser has notice that a demand instrument is overdue if he has reason to know that he is taking it more than a reasonable length of time after its issue. Because this provision is limited to demand instruments, it does not by its terms apply to the case at bar. However, since a time certificate of deposit may not be overdue in the absence of a demand, the rationale behind the "reasonable length of time" provision in section 3–304(3)(c) would apply to such a certificate of deposit.

■ Although correctly recognizing that the reasonable period of time question was a relevant issue, the district court erred in determining that point as a matter of law. Only after development and consideration of all the factors noted above and others which might be relevant, can it be determined whether an unreasonable time had elapsed. In the circumstances of this case,

the issue was a disputed factual one which could not be resolved on summary judgment. On the record presented here it cannot be said whether twenty months was an unreasonable time. Resolution of the issue must await further proceedings in the district court. We intimate no view as to what conclusion the district court should reach.

If it is determined that plaintiff was a holder in due course, then even if defendant bank is able to establish payment as a defense, it would not foreclose recovery by plaintiff. § 3–305.[7]

## II. PAYMENT

Depending upon the outcome of the factual inquiry into the holder in due course issue, the question of payment may become relevant. We therefore turn to that matter.

As a general principle, payment by the bank to the named payee in accordance with the certificate's terms would discharge the obligation and the underlying transaction. §§ 3–601, 3–603, 3–802; J. White & R. Summers, Uniform Commercial Code 535–38, 540–44 (2d ed. 1980). Here, however, there were two terms of the instrument which the bank did not observe. First, the certificate was payable to "the Insurance Company of North America for the account of Delaware Candy and Tobacco Service." The bank did not pay INA but Candy. Second, the certificate required that it be paid after maturity "only upon presentation and surrender of the certificate." That also was not done. The bank rolled over the original certificate without receiving that document, an action that defendant's witnesses conceded was contrary to good banking practice.

### A.

The bank contends that the payable language of the certificate of deposit should be

---

7. The trial court also found that plaintiff could not gain holder in due course status through the shelter principle of § 3–201 because INA's rights in the instrument "were extinguished when the principal obligation which the certificate of deposit secured (the surety bond) was

discharged." 538 F.Supp. at 716–17. According to the plaintiff's reply brief, [i]t does not seek to recover through the Shelter Principle," Reply Brief at 12, and accordingly we need not address that issue.

construed as naming Candy payee and thus payment to it was proper. In support of this proposition, the bank points to section 3–117(a) which provides that "[a]n instrument made payable to a named person with the addition of words describing him . . . as agent or officer of a specified person is payable to his principal but the agent or officer may act as if he were the holder." As explained by the Official Comment, an instrument payable to "John Doe, agent of Richard Roe" is "payable to the principal and . . . the agent or officer is named as payee only for convenience in enabling him to cash the check." Unif. Commercial Code § 3–117 Official Comment 1, 2 U.L.A. 98 (1977). The bank's position is that the payable clause describes INA as an agent of Candy.

The bank relies on *Fireman's Fund Insurance Co. v. Security Pacific National Bank,* 85 Cal.App.3d 797, 149 Cal.Rptr. 883 (1978). In that case a check was drawn to the order of "Security Pacific National Bank A/C No. 260 049 569 G.C. Associates," the account being one at Security by that name and number. The court stated that the "G.C. Associates" language was "not added for the purpose of merely describing Security, but rather for the purpose of making the instrument payable to the specific account of G.C. Associates, the principal." 85 Cal. App.3d at 818, 149 Cal.Rptr. at 897. The court also viewed its interpretation of the payee language and section 3–117 as consistent with Code section 4–201, which provides that a bank serves as an agent for the owner of an instrument during the collection process. *Id.* at 818 n. 24, 149 Cal.Rptr. 897 n. 24.

We do not find *Fireman's Fund* persuasive in the context of this case. A surety such as INA does not stand in the same relationship to a designated account as does a bank. The nature of the transaction here—posting of collateral—is inconsistent

with the theory that INA would act as an agent for Candy, the debtor, with respect to disposition of collateral during the life of the bond. Their interests in this relationship were not congruent. Obviously, the bonding company wished to keep the collateral for its own protection—and not to serve Candy's interests.

■ Moreover, the wording of section 3–117(a) makes clear its inapplicability to the case at hand. INA was not an agent or officer of Candy, nor was it identified as such. As noted, the nature of the transaction belies an agency concept and the bank was aware of the relationship between Candy and INA.[8] We find no merit in the bank's argument that Candy was the designated payee of the certificate of deposit. *See Swiss Baco Skyline Logging, Inc. v. Haliewicz,* 18 Wash.App. 21, 567 P.2d 1141, 1147 (1977) (in phrase payable to "Emil Haliewicz, Swiss Baco Skyline Logging, Inc.", comma creates ambiguity, but intent of parties indicates payable to Haliewicz.); *West Penn Administration, Inc. v. Union National Bank,* 233 Pa.Super. 311, 335 A.2d 725 (1975) (payee designation "Pittsburgh National Bank Carpenters Construction Account" makes the bank payee; court looks to language of related agreement); *cf.* § 3–117, Delaware Study Comment (c) (independent notice of facts).[9]

### B.

Section 3–603 provides that payment to a holder discharges the liability of a party. Under the Code, a holder is defined as "a person . . . in possession . . . of an instrument . . . issued or indorsed to him or to his order." § 1–201(20). But Candy was not a holder of the certificate since it did not have possession, and the certificate was neither issued nor indorsed to it. It follows, therefore, that at the time of the rollover in 1976, payment was made to an entity not

---

8. In his deposition, John C. Poplos, a bank official, testified that in October 1976 there was information in the bank's file that the certificate was being used as collateral for the INA bond.

9. Judge Sloviter does not join the majority in Part II A of the opinion. She does join in the Part II B finding that payment to an entity not the holder does not constitute payment on the instrument.

authorized to receive the funds. This action constituted a violation of the bank's commitment to pay only upon tender of the certificate.

At the time the rollover took place, INA would have had an unquestioned right to the funds if resort to collateral was necessary and the defense of payment would have had no validity. Indeed, as the district court noted, the bank could properly have refused a request by Candy in 1976 to roll over the certificate since INA was the proper recipient of the funds at that time. 538 F.Supp. at 715.

Instead of looking to the situation as it existed in the fall of 1976, however, the district court shifted its scrutiny to June 1978. At that time, argues the bank, the surety bond had been released. Therefore INA no longer had any claim against the certificate held as collateral and its ownership shifted to Candy. It was Candy, the bank contends, which in effect assigned the certificate to plaintiff. The court accepted the argument that when the certificate came under Candy's control after its account had been credited twenty months earlier, the instrument became subject to the defense of payment and with that encumbrance came into plaintiff's possession.

The bank's contention is that even if it is held that there was no payment in 1976, that erroneous and ineffective action became payment in 1978 when the instrument became subject to Candy's direction. Restated, what was not a payment on the instrument in 1976, when the rollover occurred, became one in 1978 when the certificate was transferred by INA to plaintiff at Candy's request.

 This argument fails to separate the events of 1976 and 1978 and improperly treats them as one. Moreover, it ignores the fact that Candy never was a holder of the certificate which INA ultimately indorsed, not to Candy but to plaintiff. In addition, the right to return of the collateral, or such part of its proceeds that were not utilized for reimbursement of the surety's outlays under the bond, flowed from INA's contractual obligation to Candy; Candy's rights in this respect did not come from the bank. Given these factors, the district court erred in concluding that the bank's actions constituted payment on the certificate.[10]

Although we have concluded that there was no payment on the instrument under section 3–603, that does not preclude liability of Candy to reimburse the bank for the funds given in error. However, while the defense of payment on the instrument is not available against the plaintiff, if it is not a holder in due course then it took the certificate subject to defenses available in an action on a simple contract. Section 3–306, see section 3–601(2). The availability of section 3–306 claims and defenses may allow the district court to go beyond the narrow transfer of the certificate itself and explore the whole of the transactions among the parties.

The district court and the parties understandably have not yet found it necessary to resolve a number of factual and procedural matters with respect to the bank's claim for reimbursement and whether it constitutes a defense against plaintiff under section 3–306. See Morris, The Use of Set-Off, Counterclaim and Recoupment: Availability Against Commercial Paper, 62 W.Va.L.Rev. 141 (1960); Note, Prior Party Set-Off as a Defense Under U.C.C. Section 3–306(b), 1981 U.Ill.L.Rev. 869 (1981). Moreover, there are intimations in the briefs that the bank believes the transactions between Candy and the plaintiff were tainted with collusion.[11]

10. As an alternative argument that payment was not made on the instrument, plaintiff contends that § 3–603 imposes a standard of care on Farmers to follow reasonable commercial practices in making payment on a negotiable certificate of deposit. It asserts that "unless Farmers is able to establish that it followed reasonable banking practice, its defense of pay-

ment is defeated." Appellant's Brief at 25. Since we have decided that payment was not made to a holder, we need not address this additional ground put forth by plaintiff.

11. We note for example that the bank's brief refers to its third party claims for unjust enrichment against Candy and several joint ven-

We are not inclined to give opinions on a number of potential results on a record which is not complete and one which counsel have not prepared in anticipation of this precise problem. We conclude that the bank's claim for reimbursement is not ripe for appellate review. We prefer to address the issue of the bank's rights if the plaintiff is found to be a mere holder, if and when, that matter comes to us after full development in the district court.

Defendant, relying on *Rozen v. North Carolina National Bank,* 588 F.2d 83 (4th Cir.1978), asserts that INA was obligated to return the collateral and therefore the plaintiff's assignor was Candy not INA. Therefore, contends defendant, plaintiff took only such limited rights as Candy held and, without its indorsement, could not become a holder. But here plaintiff possessed a negotiable instrument indorsed to it by the named payee, and Candy's "assignment" occurred before the termination of INA's rights as a pledgee. Those circumstances are quite different from those in *Rozen* where the certificate was not payable to the transferor and had been dishonored to Rozen's knowledge before he received it. Moreover, in *Rozen* there was a jury finding on the disputed issue of the identity of the responsible assignor.

*Rozen* was concerned primarily with whether the plaintiff could claim holder in due course status through the shelter principle, an issue not present in this appeal, *see* n. 7, *supra.* We do not find *Rozen* controlling on the questions of whether plaintiff can claim holder in due course status independent of INA's status, and whether the plaintiff is subject to claims and defenses of the bank and others.

## III. CONVERSION

Under section 3–419(1)(c) payment on a forged endorsement constitutes conversion. Plaintiff contends that when the bank issued the rollover certificate, it did so on the

basis of an "unauthorized endorsement," which it argues is the equivalent of paying on a forgery. The district court rejected that contention because the only entity which could have been harmed at the time of the alleged conversion was INA. Since INA had no loss which required resort to the collateral, the court concluded there was no claim for a conversion.

■ We agree that there is no claim for conversion but on a different basis than that adopted by the district court. In our view, plaintiff as an owner of the instrument would have standing to sue on a conversion count. However, the bank did not obtain possession of the certificate before crediting funds to Candy. Hence, there never was an unauthorized or forged endorsement to the certificate and, consequently, section 3–419 does not apply.

## IV. NEGLIGENCE

As an alternative claim for recovery, plaintiff asserts that the bank was negligent in paying Candy without requiring the surrender of the certificate of deposit. As a result, the negotiable instrument was permitted to float in the stream of commerce causing injury to the plaintiff. The bank contends that the only party to whom it may have owed a duty was INA. Since INA made no claim against the collateral and plaintiff received the certificate from INA, defendant asserts that plaintiff cannot demonstrate a cognizable loss. The bank also contends that its action was not the proximate cause of plaintiff's loss, but that misleading information about the maturity date supplied by INA and Candy's activity caused the harm to plaintiff.

Defendant's final argument is that the Code displaces an action based on common law negligence. We turn to that issue first. In *New Jersey Bank v. Bradford Securities Operations, Inc.,* 690 F.2d 339 (3d Cir.1982), a case arising under Article 8, Judge Becker's opinion for the court addressed the

turers as a result of having received funds for the certificate. The bank also alleges that plaintiff purchased Candy for a nominal sum and used the assets to satisfy the obligations

for which the certificate in question was given as collateral. Appellee's Brief at 4. None of these points have as yet been addressed by the district court. *See also* n. 4, *supra.*

status of parallel common law remedies for violations redressable under the Code. He concluded that where the Code provides a comprehensive remedy for parties to a transaction, a common law action is barred. 690 F.2d at 345–46. *See also* §§ 1–102(1)–(2), 1–103. But a remedy in tort will be recognized where the Code's policy is furthered by "placing the risk of loss on the party most able to minimize that risk." 690 F.2d at 347.

■ The circumstances of the case at hand fit within the latter category. The bank was in a position to prevent the loss by insisting upon surrender of the certificate. *See* § 3–505; 5B *Michie on Banks and Banking,* § 326a at 257–58 (1973) (generally held that bank cannot be compelled to pay a certificate of deposit without its production and surrender; otherwise bank acts at its peril). It was foreseeable that its unexplained conduct in permitting this negotiable instrument to remain at large could cause loss to innocent parties who subsequently acquired it. Moreover, since an action in negligence is separate and distinct from any claim based on the instrument or the underlying contract, we do not believe that the allocation of rights created by the holder in due course doctrine presents such a comprehensive remedial scheme as to supplant a negligence action. *New Jersey Bank,* 690 F.2d at 346–47. Accordingly, we find that the Code does not bar a claim based on a theory of negligence.

■ We cannot say on this record that plaintiff has no standing to recover on a negligence claim against the bank. The fact that the bank might not have foreseen the precise entity that would sustain injury does not foreclose liability. The trial court erred in limiting the bank's duty to INA. *See Delmarva Power & Light Co. v. Burrows,* 435 A.2d 716, 718 (Del.1981) ("one's duty encompasses protecting against reasonably foreseeable events.").

Finally, whether the bank's conduct was the proximate cause of injury is a question to be determined by the fact finder. Whether plaintiff changed its position in reliance upon the erroneous information

furnished by INA remains to be developed in the record. But even if that information caused plaintiff to continue its business dealings with Candy, that would not necessarily foreclose any liability of the bank for setting the chain of events in motion.

Accordingly, the summary judgment in favor of defendant will be vacated and the case remanded to the district court for further proceedings consistent with this opinion.