[No. B050679. Second Dist., Div. Seven. Oct. 22, 1991.]

FINALCO, INC., Plaintiff, Cross-defendant and Respondent, v.
T. STEVEN ROOSEVELT, Defendant, Cross-complainant and Appellant.

### COUNSEL

Theodore S. Roosevelt, Marcus & Mallard, Marcus & Courtade and Jay Marcus for Defendant, Cross-complainant and Appellant.

Plotkin, Rapoport, Wish & Nahmias, Russell H. Rapoport, Nyemaster, Goode, McLaughlin, Voights, West, Hansell & O'Brien and W. Don Brittin, Jr., for Plaintiff, Cross-defendant and Respondent.

### OPINION

**JOHNSON, J.**—This is an appeal by defendant and cross-complainant, Roosevelt, from a judgment in favor of plaintiff and cross-defendant, Finalco, Inc., in an action arising from Roosevelt's purchase of undivided co-ownership interests in certain computer equipment from the Dover Asset Group, Inc. (Dover). We affirm.

#### FACTS AND PROCEEDINGS BELOW

In December 1985, Dover offered undivided co-ownership interests in certain computer equipment owned by Dover and leased to Finalco. These interests were sold in "units" by means of a confidential private placement memorandum. (See 15 U.S.C. § 77d(1).) Roosevelt purchased two "units" paying approximately $8,000 in cash and executing a promissory note for the balance. Dover assigned this note to Finalco sometime prior to June 1986. Dover marketed the "units" as a tax shelter. In theory, the investor would not be required to make payments on the note because those payments would be covered by Finalco's lease payments to Dover.

Roosevelt made no payments on the note in 1986 because, according to his testimony, "the program turned out to be self-funding as it was indicated on the projected income sheets." However, in January 1987, Finalco sent Roosevelt a letter demanding payment on the note. Roosevelt made three payments of $1,000 each in 1987 and one payment of $1,000 in 1988. In

October 1988, Finalco filed suit for the balance due on the note. Roosevelt answered and filed a cross-complaint against Finalco, Dover and other cross-defendants. The case was tried to the court which granted judgment to Finalco on its suit and on the cross-complaint. The judgment awarded attorneys' fees to Finalco for fees incurred in prosecuting its action on the note as well as for defending against Roosevelt's cross-complaint. Roosevelt filed a timely notice of appeal.

## DISCUSSION

There was no dispute over whether Roosevelt executed the note, or the payments he made on it, or the amount of the balance. Essentially, the trial was on Roosevelt's cross-complaint.

■ In his defense to Finalco's suit on the note and in his cross-complaint, Roosevelt raised numerous claims based on violations of federal and state securities laws, RICO (Racketeer Influenced and Corrupt Organizations Act), and common law fraud and misrepresentation. The trial court found there was insufficient evidence to support any of these claims. We do not reach this question because we find defendant's claims fail for a more fundamental reason: lack of sufficient evidence linking Finalco to any of the alleged wrongdoing on the part of Dover. There was insufficient evidence to establish Finalco was a "seller" of securities or that it engaged, with Dover, in a conspiracy to defraud Roosevelt. The evidence did establish, however, Finalco was a holder in due course of the note sued upon and, therefore, took free of any defenses Roosevelt may have had against Dover even assuming those defenses were established.

1. *Roosevelt Presented No Evidence Finalco Was the Seller of the Units He Purchased.*

Assuming the sale of the units representing an interest in the computer equipment constituted a sale of securities, in order to be liable for securities fraud under federal or state law Finalco must have been the "seller" of those securities. (15 U.S.C. § 77*l*; Corp. Code, § 25401.) There is no evidence in the record Finalco sold, or offered for sale, the units Roosevelt purchased. Indeed, in his reply brief, Roosevelt abandons his claim Finalco was the seller of the units.

2. *Roosevelt Presented No Evidence of a Conspiracy Between Finalco and Dover to Defraud Him.*

When asked by the trial court to identify the evidence supporting his claim of a conspiracy by Finalco and Dover to defraud him, Roosevelt referred to the private placement memorandum, Finalco's annual reports, and notes executed by Dover in favor of Finalco. We have reviewed this evidence and

find nothing to suggest Finalco was aware of any tortious scheme on the part of Dover, assuming such a scheme existed. (See *Wyatt* v. *Union Mortgage Co.* (1979) 24 Cal.3d 773, 784-785 [157 Cal.Rptr. 392, 598 P.2d 45].)

### 3. *Finalco Took Roosevelt's Note Free From Any Defenses Roosevelt May Have Had Against Dover.*

Roosevelt contends Finalco was not a holder in due course of the note because at the time it accepted assignment of the note from Dover it was on notice Roosevelt was in default on his payments. (Cal. U. Com. Code, § 3302, subd. (1)(c).) There is no evidence to support this claim. Although the record does not reflect the date Roosevelt's note was assigned from Dover to Finalco it had to have been prior to June 25, 1986, because on that date Michigan National Bank, to whom Finalco endorsed the note, in turn endorsed the note to Marine Midland Bank. The first indication of Finalco's knowledge of Roosevelt's default is Finalco's letter of January 21, 1987. Furthermore, Roosevelt testified he was not in default on the note in 1986.

Roosevelt next contends even if Finalco took the note from Dover as a holder in due course Finalco lost that status when it assigned the note to the Michigan National Bank because after the assignment Finalco was no longer a holder. (Cal. U. Com. Code § 1201, subd. (20) [" 'Holder' means a person who is in possession of a document . . . ."].) Furthermore, when Finalco subsequently reacquired Roosevelt's note several months before trial it did not take as a holder in due course because by then Finalco clearly knew Roosevelt was in default. (Cal. U. Com. Code, § 3302, subd. (1) ["A holder in due course is a holder who takes the instrument [¶] . . . [¶] (c) Without notice that it is overdue . . ."].)

Roosevelt's argument ignores section 3201, subdivision (1) of the California Uniform Commercial Code which provides, "Transfer of an instrument vests in the transferee such rights as the transferor has therein . . . ."

This "shelter" provision is identical to section 3-201, subdivision (1) of the Uniform Commercial Code. "Its policy is to assure the holder in due course a free market for the paper . . . ." (Cal. U. Com. Code Com., [¶] 3, quoted in 23B West's Ann. Cal. U. Com. Code (1964 ed.) § 3201, p. 106 [Deering's Ann. Cal. U. Com. Code, § 3201 (1986 ed.) p. 341.]; and see *Rozen* v. *North Carolina Nat. Bank* (4th Cir. 1978) 588 F.2d 83, 86.) Thus, when a transferee takes an instrument from a holder in due course the transferee takes free from all claims and defenses to the same extent as did the holder in due course *even if* the transferee is aware of those claims and defenses. If this was not the rule, a holder in due course could be deprived of a market for the instrument if the obligor widely disseminated notice of a

claim or defense. Such a result would not benefit the obligor, who would still be liable to the holder in due course, but it would harm the holder in due course by destroying a market for the instrument. (*Rozen* v. *North Carolina, supra,* 588 F.2d at p. 86; 4 Hawkland, Uniform Commercial Code Series (1984) § 3-201:03, p. 272.)

Under California Uniform Commercial Code section 3201, subdivision (1) it is irrelevant that Finalco could not reacquire the note as a holder in due course. The shelter provision does not make the transferee a holder in due course; it transfers the freedom from claims and defenses of the original holder in due course to each succeeding transferee. Finalco was simply another transferee in a chain of transfers of the Roosevelt note. Where the transferee happens to have been a prior holder in due course, it takes back from its transferor the same rights it transferred. Here, Finalco was in no better or worse position vis-à-vis Roosevelt's claims and defenses against Dover than if Finalco had originally retained possession of Roosevelt's note.

4.   *The Attorneys' Fee Award to Finalco Was Proper.*

The note signed by Roosevelt contains a provision stating "[m]aker agrees to pay all costs of collection . . . including, without limitation, all attorney's fees and expenses and court costs." In accordance with this provision, the trial court awarded Finalco attorneys' fees in the amount of $71,565.32.

■   Roosevelt contends the term "costs of collection" limits Finalco to recovery of the reasonable attorneys' fees incurred in proving up its action on the note but does not permit Finalco to recover attorneys' fees incurred in defending against Roosevelt's cross-complaint. He argues the term "cost of collection" was insufficient to put him on notice he would be obligated to pay Finalco's attorneys' fees incurred in defending a separate claim regarding the validity of the underlying sale of the units under federal securities laws. Furthermore, such a construction of the attorneys' fees provision would conflict with public policy to encourage prosecution of securities fraud actions.[1] We disagree with both of Roosevelt's contentions.

On the notice issue, the decision in *IMO Development Corp.* v. *Dow Corning Corp.* (1982) 135 Cal.App.3d 451 [185 Cal.Rptr. 341] is directly on point. In *IMO Development,* the purchaser of real estate sued the seller for breach of contract and declaratory relief. The seller cross-complained for recovery on the buyer's promissory note. The promissory note contained an attorneys' fee clause almost identical to the one in the present case. It provided: "Borrower hereby promises to pay all costs of collection including, but not limited to, reasonable attorneys' fees . . . ." (*Id.* at p. 461.) The

---

[1]Roosevelt does not contend the attorneys' fee award is excessive in any other respect.

trial court awarded judgment to the seller on the purchaser's complaint and the seller's cross-complaint but refused to award the seller attorneys' fees incurred in litigating the purchaser's declaratory relief action on the ground such litigation did not fall within the scope of the attorneys' fees clause. The Court of Appeal reversed the denial of attorneys' fees. The court found the seller was required to defend the declaratory relief action in order to collect the note because the declaratory relief claim was an affirmative defense to the seller's action on the note. Both actions were "inextricably intertwined." (*Id.* at p. 463.) The court concluded, "the cost of litigating the issue raised by IMO's defense constituted part of the cost of collection." (See also *Wagner* v. *Benson* (1980) 101 Cal.App.3d 27, 37 [161 Cal.Rptr. 516] [bank's attorneys' fees in defending borrower's fraud action were "reasonable costs incurred in [its cross-complaint] collecting the balance due on the notes"]; *Duryea* v. *Third Northwestern Nat. Bank* (8th Cir. 1979) 606 F.2d 823, 826 [bank's attorneys' fees in defending borrower's suit for violations of federal banking laws were "'costs of collection' of the note" incurred in bank's cross-complaint.].)

Roosevelt relies principally on *Jackson* v. *Oppenheim* (2d Cir. 1976) 533 F.2d 826 in which the court held a provision in a note obligating the borrower to pay "all costs of collection, including, but not limited to, counsel fees" entitled the lender to recover attorneys' fees involved in successfully prosecuting a cross-complaint to recover on the note but not fees incurred in defending against the borrower's suit challenging validity of the underlying sale of securities. *Jackson* is similar to the present case in that the borrower's action was based on a violation of federal securities laws and the lender's action was for payment due on the note by which plaintiff financed the securities' purchase. However, significant differences exist between *Jackson* and the present case.

The court in *Jackson* characterized the plaintiff's suit challenging the validity of the sale transaction under federal securities laws as "incidental" to the defendant's cross-complaint on the note and viewed New York law as "unsettled" on the question whether defendant was entitled to attorneys' fees for defending against the securities fraud action in the course of prosecuting the cross-complaint on the note.

In the present case, Finalco's defense to Roosevelt's action under the federal securities laws was not "incidental" to the prosecution of its cross-complaint to recover on the note. Roosevelt sought to rescind the purchase of the units on the basis of Finalco's alleged violation of federal securities laws. Not only was Finalco obliged to file a complaint to recover on the note, it was obliged to defend against Roosevelt's allegations of securities fraud in order to succeed on its complaint. Factually, this case is much like *Wagner* v. *Benson, supra,* 101 Cal.App.3d 27. In *Wagner* the plaintiffs

borrowed money from a bank to invest in a cattle raising program. When beef prices fell and costs rose the bank made a margin call to bolster the sagging value of the herd. The plaintiffs refused to pay and sued the bank and others for fraud. The bank cross-complained to recover the deficiency on the plaintiffs' notes. Judgment was granted the bank on plaintiffs' complaint and the bank's cross-complaint. In holding the bank was entitled to attorneys' fees incurred in defending the plaintiffs' fraud action, the court reasoned, "the Bank's collection efforts were interrelated with its defense against the Wagners' fraud allegations. Defense of the charge of fraud was necessary in the Bank's efforts to collect the notes." (101 Cal.App.3d at p. 37; cf. *IMO Development Corp.* v. *Dow Corning Corp., supra,* 135 Cal.App.3d at pp. 463-465; *Duryea* v. *Third Northwestern Nat. Bank, supra,* 606 F.2d at p. 826.) Thus, unlike *Jackson,* the competing claims between Roosevelt and Finalco were "inextricably intertwined" and California law is settled that a borrower's obligation to pay attorneys' fees incurred in the collection of the note includes attorneys' fees incurred in defending against a challenge to the underlying validity of the obligation.

In *Jackson,* the court noted that given the unsettled nature of New York law it was reluctant to reach a result in conflict with the general "American rule" against awarding attorneys' fees to the successful party. Such a result, the court observed, would also discourage the bringing of actions under the securities laws by investors who believed in good faith they had been defrauded. (533 F.2d at p. 831.) The concerns expressed in *Jackson* are much less significant in California where, under the mutuality doctrine embodied in Civil Code section 1717, if one party is entitled to recover attorneys' fees when it prevails in an action on a contract, then both parties are. Had Roosevelt prevailed in his action against Finalco he would have been entitled to attorneys' fees through Civil Code section 1717. (*Wagner* v. *Benson, supra,* 101 Cal.App.3d at p. 37; and see *Manson* v. *Reed* (1986) 186 Cal.App.3d 1493, 1505-1506 [231 Cal.Rptr. 446].) Thus, if anything, Civil Code section 1717 facilitates actions for securities fraud because the mutuality doctrine makes it possible for the defrauded investor to recover attorney's fees. A holding Finalco was not entitled to attorneys' fees would have just the opposite effect because it would mean that in future cases a plaintiff who successfully defended against a contract claim by establishing securities fraud could not use the mutuality doctrine of Civil Code section 1717 to recover attorneys' fees from the plaintiff and cross-defendant.

DISPOSITION

The judgment is affirmed.

Lillie, P. J., and Woods (Fred), J., concurred.

A petition for a rehearing was denied November 20, 1991.