Filed 4/30/21  Singh v. Molnar CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| JASBIR SINGH, | B303366 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC519223) |
| v. | |
| CHRISTIAN S. MOLNAR, | |
| Defendant and Respondent. | |

　　　　APPEAL from a postjudgment order of the Superior Court of Los Angeles County, Teresa A. Beaudet, Judge.  Affirmed.

　　　　Betty Agawa and Ronald Wolfgang Betty for Plaintiff and Appellant.

　　　　Murphy Pearson Bradley & Feeney, Michael P. Bradley and Jeff C. Hsu for Defendant and Respondent.

_____

Jasbir Singh appeals from a postjudgment order awarding Christian S. Molnar $1,232,735 in attorneys' fees, including $625,990 for work performed by the law firm of Murphy Pearson Bradley & Feeney (MPBF). In the underlying action, Singh sued Molnar, his former attorney, for conversion, legal malpractice, and related claims after Molnar took possession of a vehicle offered to Singh in a settlement and credited Singh for the market value of the vehicle as an offset against unpaid attorneys' fees invoices. Molnar filed a cross-complaint to recover more than $200,000 in unpaid fees. The trial court entered judgment for Molnar on all claims and cross-claims, and we affirmed. (*Singh v. Molnar* (April 30, 2021, B297036) [nonpub. opn.] (*Singh I*).)

In this appeal, Singh contends the trial court erred in awarding fees for MPBF's work because Molnar was not entitled under the attorney fee provision in the parties' retainer agreement to recover for fees expended as to Singh's tort claims. We conclude the broadly-worded attorney fee provision supports recovery of fees for Molnar's defense of all claims, and affirm.

# FACTUAL AND PROCEDURAL BACKGROUND[1]

A.  *The Legal Services Agreement, Settlement, and Transfer of the Vehicle to Molnar*

Singh owned and operated restaurants in Los Angeles and leased space to other restaurateurs.[2] Beginning in 2007 and continuing until March 2013, Singh retained Molnar as his lawyer for a variety of legal matters, including two lawsuits involving Singh's tenant, Sumant Pardal.

Molnar's representation of Singh in connection with the Pardal lawsuits was governed by an Agreement for Legal Services executed by the parties on October 18, 2012 (the legal services agreement). Paragraph 18 of the agreement provided, "If any party hereto brings an action to enforce the terms hereof or to declare such party's rights hereunder, . . . the prevailing party in any such action, on trial or appeal, shall be entitled to all of its reasonable attorneys' fees, to be paid by the losing party, without any limitation by . . . the [c]ourt's schedule of fees."

The Pardal lawsuits were settled at a one-day mediation on February 27, 2013 at which Molnar represented Singh. The resulting settlement agreement required Pardal to make a series

---

[1]     The underlying facts and proceedings leading up to the judgment are discussed in greater detail in *Singh I, supra,* B297036.

[2]     Singh, his wife, and several business entities owned by them were plaintiffs in the underlying action, and the trial court's final order required several of the plaintiffs to pay attorneys' fees, but only Singh appeals from the award. For simplicity, we refer to Singh and the related parties collectively as Singh.

3

of payments to Singh and also to transfer his 2003 Mercedes Benz S430 (the vehicle) to Singh by providing the vehicle to Molnar. As we explained in *Singh I, supra*, B297036, the primary dispute in the underlying action was whether Singh and Molnar reached an oral agreement on the day of the mediation for Molnar to keep Pardal's vehicle as payment toward the attorneys' fees Singh owed Molnar, or whether Molnar converted the vehicle. On March 18, 2013 Singh terminated Molnar as his lawyer and demanded Molnar deliver the vehicle to him. Molnar refused, writing, "[Y]ou gave me the car as a partial payment for your outstanding legal fees and invoices in the Pardal matter, in fact, it was your idea . . . ." (Italics removed.) Singh responded, "I never agreed to give you a car as a partial payment or a payment in trade or any of the [Kelley] [B]lue [B]ook value. I was disputing [all] your . . . bills." Molnar credited Singh $12,827 for the vehicle as an offset to outstanding attorneys' fees owed under the legal services agreement.

B.      *The Complaint, Cross-complaint, and Pretrial Proceedings*

Singh filed this action on August 22, 2013 against Molnar and Stephanie Chan, an associate attorney at Molnar's law firm. Singh's operative first amended complaint, filed on July 23, 2014, alleged 12 causes of action: (1) accounting; (2) breach of oral contract; (3) breach of written contract; (4) breach of fiduciary duty; (5) constructive trust; (6) conversion; (7) declaratory relief; (8) fraud and deceit; (9) equitable indemnification; (10) negligent misrepresentation; (11) legal malpractice; and (12) civil extortion. Singh's second cause of action for breach of contract alleged breach of the legal services agreement and that the breach was based on Molnar's conversion of the car. The breach of fiduciary

4

duty claim similarly was based on Molnar's conversion of the vehicle. The declaratory relief claim sought a declaration whether Singh owed Molnar "any money, or whether [Molnar] owe[d] [Singh] money when his damages are offset against the balance due on the [legal services agreement]." Beginning in March 2014 MPBF represented Molnar and Chan in their defense of the action.

On August 29, 2014 Molnar filed a cross-complaint asserting more than 20 causes of action, seeking payment for legal services, enforcement of a charging lien based on the legal services agreement, and damages.[3] MPBF did not represent Molnar on his cross-claims. From March 2014 through January 2017 Molnar was represented by Joseph C. Cane, Jr., and later by Kevin S. Conlogue.

On December 12, 2014 the trial court sustained Molnar and Chan's demurrer to Singh's causes of action for constructive trust and equitable indemnification. On January 31, 2017 the court granted summary judgment in favor of Chan and summary adjudication in favor of Molnar as to all of Singh's claims except conversion and declaratory relief. The court also allowed Singh's claims for breach of oral contract, breach of fiduciary duty, and legal malpractice to proceed to the extent they were premised on Molnar's alleged conversion of the vehicle.

---

[3] On April 1, 2014 Molnar filed a separate limited action against Singh asserting numerous claims for payment for legal fees and costs in other smaller matters. (*Molnar v. Singh* (Super. Ct. L.A. County, 2014, No. SC122329).) That action was consolidated with the present action for trial.

C.    *The Bifurcated Bench Trial*

On June 30, 2017 the parties entered a stipulation to try all remaining causes of action asserted by both parties as a bench trial and to bifurcate the trial into two phases.  The first phase of trial addressed whether the legal services agreement was valid. The court in its March 7, 2018 statement of decision ruled the agreement was valid and enforceable.

The second phase of the trial addressed Singh's and Molnar's claims.  The trial proceeded over 11 days in June and July 2018 and included testimony from nine lay witnesses and two experts.  The primary subject of the witness testimony was whether Singh and Molnar agreed Molnar would keep Pardal's vehicle as payment for legal services.[4]

On January 22, 2019 the trial court issued an 11-page statement of decision addressing Singh's conversion-related claims.  The court found Singh and Molnar had an oral agreement to transfer Pardal's car to Molnar to offset Molnar's attorneys' fees, and accordingly Molnar did not convert the vehicle when he took possession and registered it in his own name.  Because there was no conversion, the court found Singh did not prevail on his remaining causes of action for breach of oral contract, breach of fiduciary duty, legal malpractice, and declaratory relief, all of which were predicated on Molnar's conversion of the vehicle.

---

[4]    The expert witnesses' testimony was limited to whether the parties' agreement to exchange the vehicle for fees violated former rule 3-300 of the State Bar Rules of Professional Conduct regulating business transactions between attorneys and their clients.

6

On March 22, 2019 the trial court issued a 16-page statement of decision addressing Molnar's cross-claims to recover his fees. The court awarded Molnar $214,606 plus interest based on fees owed under the legal services agreement, with an offset of $2,173.[5]

On May 7, 2019 the trial court entered judgment in favor of Molnar. Singh appealed from the judgment as to his conversion-based claims, and we affirmed in *Singh I, supra*, B297036. Singh did not appeal the court's rulings on summary judgment, phase one of the trial, or the phase two ruling on Molnar's cross-claims.

D. *Molnar's Motion for Attorneys' Fees*

On March 24, 2019 Molnar filed a motion for attorneys' fees and costs pursuant to Civil Code section 1717 (section 1717) and Code of Civil Procedure sections 1032 and 1033.5. Molnar argued he was the prevailing party on all claims and cross-claims and therefore was entitled to recover his fees under the legal services agreement. Molnar sought $1,640,790 in attorneys' fees plus $66,375 in costs. Of the requested fees, $632,470 related to work performed by MPBF defending Molnar and Chan with respect to Singh's claims.

In his opposition, Singh argued the fees Molnar sought in connection with his cross-claims were unreasonable and excessive; Molnar improperly sought to recover fees for lawyers

---

[5] The trial court reduced the damages by $2,173 because it found Molnar should have credited Singh $15,000 for the vehicle—the amount stated on a bill of sale prepared by Pardal's lawyer—and not $12,827, the amount Molnar claimed was the car's private party resale value in the Kelley Blue Book automotive pricing guide.

who worked at his own law firm; and the fees incurred for the defense of Singh's legal malpractice claims[6] should be disallowed because they were not "on a contract" as required by section 1717.

Following multiple rounds of supplemental briefing and two hearings, on September 27, 2019 the trial court issued its tentative order to award Molnar $625,990 for MPBF's work defending against Singh's claims, explaining, "'[T]he pivotal point in the analysis whether a prevailing party is entitled to recover contractual attorney fees for defending against a competing noncontractual claim (when the language of the agreement does not encompass noncontractual claims or is ambiguous) is not whether the fees can be apportioned between the theories but whether a defense against the noncontractual claim is necessary to succeed on the contractual claim.' ([*Siligo v. Castellucci* (1994) 21 Cal.App.4th 873,] 879.)" Further, "the defense of the legal malpractice claims was necessary to succeed on the breach of contract," and the associated attorneys' fees were thus fees incurred "'in defending against a challenge to the underlying validity of the obligation.'" The court reduced Cane's hourly rate, made other reductions in the billed time, and disallowed the time spent by attorneys at Molnar's law firm. The court ordered the

---

[6] The parties refer to Singh's affirmative claims, all of which arose from Molnar's taking of the vehicle, collectively as legal malpractice claims despite the trial court's focus at trial on Singh's claims for conversion and breach of fiduciary duty. The fees incurred by MPBF were for Molnar's defense as to all of Singh's contract and tort claims, and MPBF did not allocate its fees among Singh's claims. Further, Singh does not argue on appeal his malpractice claim was based on anything other than the taking of the vehicle. We therefore focus our analysis on the fees incurred to defend against Singh's tort claims generally.

8

parties to prepare a joint proposed order with dollar amounts based on the court's adjustments.

On November 1, 2019 the court entered an order granting the attorneys fees' motion and awarding $1,232,735 in attorneys' fees, including $625,990 for MPBF's work. Singh timely appealed.[7]

## DISCUSSION

A. *Governing Law and Standard of Review*

"With regard to an award of attorney fees in litigation, California generally follows what is commonly referred to as the 'American Rule', which provides that each party to a lawsuit must ordinarily pay his or her own attorney fees." (*Tract 19051 Homeowners Assn. v. Kemp* (2015) 60 Cal.4th 1135, 1142; accord, *Mountain Air Enterprises, LLC v. Sundowner Towers, LLC* (2017) 3 Cal.5th 744, 751 (*Mountain Air*).) This rule is codified in Code of Civil Procedure section 1021,[8] but that section also "permits parties to '"contract out" of the American rule' by executing an agreement that allocates attorney fees." (*Mountain Air*, at p. 751; accord, *R.W.L. Enterprises v. Oldcastle, Inc.* (2017) 17 Cal.App.5th 1019, 1025.) ""Parties may validly agree that the prevailing party will be awarded attorney fees incurred in any

---

[7] On appeal, Singh only challenges the award of $625,990 for MPBF's work defending against Singh's claims.

[8] Code of Civil Procedure section 1021 provides in relevant part, "Except as attorney's fees are specifically provided for by statute, the measure and mode of compensation of attorneys and counselors at law is left to the agreement, express or implied, of the parties . . . ."

litigation between themselves, whether such litigation sounds in tort or in contract."'" (*Mountain Air*, at p. 751.) Contracting parties may also "limit the recovery of fees only to claims arising from certain transactions or events, or award them only on certain types of claims." (*Brown Bark III, L.P. v. Haver* (2013) 219 Cal.App.4th 809, 818 (*Brown Bark*).)

"'""On review of an award of attorney fees after trial, the normal standard of review is abuse of discretion. However, de novo review of such a trial court order is warranted where the determination of whether the criteria for an award of attorney fees and costs in this context have been satisfied amounts to statutory construction and a question of law."' [Citations.] In other words, 'it is a discretionary trial court decision on the propriety or amount of statutory attorney fees to be awarded, but a determination of the legal basis for an attorney fee award is a question of law to be reviewed de novo.'" (*Mountain Air, supra*, 3 Cal.5th at p. 751; accord, *Orozco v. WPV San Jose, LLC* (2019) 36 Cal.App.5th 375, 407; see *Eden Township Healthcare Dist. v. Eden Medical Center* (2013) 220 Cal.App.4th 418, 425 ["'On appeal this court reviews a determination of the legal basis for an award of attorney fees de novo as a question of law.'"].)

In deciding the scope of an attorney fee provision, we apply traditional rules of contract interpretation. (*Mountain Air, supra*, 3 Cal.5th at p. 752; accord, *Orozco v. WPV San Jose, LLC, supra*, 36 Cal.App.5th at p. 407.) "Our initial inquiry is confined to the writing alone. [Citations.] '"The 'clear and explicit' meaning of these provisions, interpreted in their 'ordinary and popular sense,' unless 'used by the parties in a technical sense or a special meaning is given to them by usage' [citation], controls judicial interpretation. [Citation.] Thus, if the meaning a

10

layperson would ascribe to contract language is not ambiguous, we apply that meaning.  [Citations.]'"  [Citations.]  At the same time, we also recognize the 'interpretational principle that a contract must be understood with reference to the circumstances under which it was made and the matter to which it relates.'"  (*Mountain Air*, at p. 752; accord, *Xuereb v. Marcus & Millichap, Inc.* (1992) 3 Cal.App.4th 1338, 1342 (*Xuereb*).)

Neither party has presented extrinsic evidence to interpret the legal services agreement.  Because Singh raises on appeal only the scope of the legal services agreement and the question of law whether Molnar can recover fees expended in defending against tort claims, we apply a de novo standard of review.  (*Mountain Air, supra*, 3 Cal.5th at p. 752.)

B.    *Section 1717 Does Not Limit the Availability of Fees Under the Legal Services Agreement*

Section 1717, subdivision (a), provides in relevant part, "In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs."  Singh contends his tort claims did not constitute an action "on a contract" within the meaning of section 1717, and therefore, the trial court erred in awarding Molnar the fees incurred by MPBF in defending against the claims.  Contrary to Singh's contention, section 1717 does not prevent parties from contracting to allow for the

11

recovery of attorneys' fees in actions sounding in tort, as the parties did here.

When section 1717 applies, its "'only effect is to make an otherwise unilateral right to attorney fees reciprocally binding upon all parties to actions to enforce the contract.'" (*Brown Bark, supra*, 219 Cal.App.4th at p. 820; see *Santisas v. Goodin* (1998) 17 Cal.4th 599, 610 ["The primary purpose of section 1717 is to ensure mutuality of remedy for attorney fee claims under contractual attorney fee provisions."].) Generally, "[t]ort and other noncontract claims are not subject to section 1717 and its reciprocity principles." (*Brown Bark*, at p. 820.) However, section 1717 does not limit an award of fees otherwise available under an agreement. As the *Brown Bark* court explained, "parties to a contract are free to agree that one or more of them shall recover their attorney fees if they prevail on a tort or other noncontract claim, but the right to recover those fees depends solely on the contractual language." (*Brown Bark*, at p. 820; accord, *Siligo v. Castellucci, supra*, 21 Cal.App.4th at p. 877 (*Siligo*) ["section 1717 does not independently bar an award for attorney fees in a tort action"]; *Xuereb, supra*, 3 Cal.App.4th at p. 1342 ["Because of its more limited scope . . . section 1717 cannot be said to supersede or limit the broad right of parties pursuant to Code of Civil Procedure section 1021 to make attorney fees agreements."]; see *Santisas*, at p. 617 [rejecting plaintiffs' argument "that attorney fees due under a contractual attorney fee provision may be recovered as costs only when expressly allowed under the terms of section 1717"] italics omitted.)

Here, the attorney fee provision of the legal services agreement is reciprocal, providing that the "prevailing party"

may recover fees incurred in an action brought by "any party." The pertinent inquiry, therefore, is not whether Singh's tort claims constitute an action "on the contract," but whether the scope of the legal services agreement covers the fees incurred by Molnar in defending against those claims. (*Brown Bark, supra*, 219 Cal.App.4th at p. 820.) It does.

C.    *The Attorney Fee Provision in the Legal Services Agreement*
      *Applies to Molnar's Defense of Singh's Tort Claims*

As discussed, the attorney fee provision in the legal services agreement provided for the prevailing party to recover reasonable attorneys' fees in "an action to enforce the terms hereof or to declare such party's rights hereunder . . . ." Singh contends this provision should be read narrowly to apply only to Molnar's cross-claims to enforce the agreement, arguing Singh's legal malpractice claim based on conversion of the vehicle "had no bearing on Molnar's fee collection cross-complaint." Singh also argues based on language from *Siligo, supra*, 21 Cal.App.4th at pages 878-879 that Molnar's conversion of the vehicle "was neither 'necessary to succeed on the contractual claim' nor an 'integral part[] of the same transaction.'" Neither contention has merit.

Parties have a right to enter into agreements for attorneys' fees that provide for recovery of fees in actions sounding in tort as well as contract. (*Mountain Air, supra*, 3 Cal.5th at p. 751; *Santisas, supra*, 17 Cal.4th at p. 608; *Brown Bark, supra*, 219 Cal.App.4th at p. 820; *Siligo, supra*, 21 Cal.App.4th at pp. 878-879.) In arguing his tort claims are outside the scope of the attorney fee provision in the legal services agreement, Singh focuses on the narrow language allowing the prevailing party to

13

recover fees in "an action to enforce the terms" of the agreement, while ignoring the language allowing the recovery of fees in an action by a party "to declare such party's rights" under the agreement. It is the latter language that allowed for Molnar's recovery of attorneys' fees in this case.

*GoTek Energy, Inc. v. SoCal IP Law Group, LLP* (2016) 3 Cal.App.5th 1240 (*GoTek*), relied on by Molnar, involved a similarly broadly-worded provision in a retainer agreement, which provided, "'In the event there is any dispute between us relating to this agreement, the prevailing party to any litigation or arbitration shall be awarded its reasonable attorneys fees and costs.'" (*Id.* at pp. 1248-1249.) The Court of Appeal concluded the patent attorneys who initially represented the plaintiff were entitled to recover their attorneys' fees in successfully defending against a legal malpractice action alleging they failed timely to file for patent rights. (*Id.* at p. 1243-1244.) The court reasoned the malpractice action arose from a dispute relating to the retainer agreement because the agreement provided for the patent attorneys to determine a patent strategy, and thus the failure to obtain a patent "constitute[d] a 'dispute' between the parties 'relating to' the Agreement." (*Id.* at p. 1250; see *Xuereb, supra*, 3 Cal.App.4th at pp. 1340, 1343-1344 [plaintiffs were entitled to recover attorneys' fees for fraud and related claims under attorney fee provision in purchase agreement that provided for recovery of fees "[i]f this Agreement gives rise to a lawsuit or other legal proceeding between any of the parties" because the alleged fraud arose out of purchase transaction].)

As in *GoTek* and *Xuereb*, Singh's conversion and related tort claims fell within the scope of the attorney fee provision because, as alleged in his declaratory relief claim, Singh sought a

14

declaration of whether Singh owed Molnar any money under the legal services agreement, or whether Molnar owed Singh any money after taking an offset for fees owed. Whether any money was owed—by Singh or Molnar—required determination of Singh's tort claims. Singh's breach of contract claim likewise depended on a determination of Singh's conversion claim, because conversion constituted the alleged breach. The remaining claims for legal malpractice and breach of fiduciary duty involved the same allegation that Molnar converted the vehicle. Thus, Singh's affirmative claims sought to "declare [Singh's] rights" under the legal services agreement. (See *Siligo, supra*, 21 Cal.App.4th at pp. 877, fn. 2, 880 [seller of business assets was entitled to recover his attorneys' fees under agreements providing for attorneys' fees in action "to interpret or enforce this Agreement" where seller "was required to defend against fraud in order to succeed on his complaint to enforce the agreements"]; *Finalco, Inc. v. Roosevelt* (1991) 235 Cal.App.3d 1301, 1307 [promissory note holder's defense on cross-claims "was not 'incidental' to the prosecution of its cross-complaint to recover on the note. . . . Not only was [it] obliged to file a complaint to recover on the note, it was obliged to defend against [borrower's] allegations of securities fraud in order to succeed on its complaint."].)

The parties' contemporaneous communications about the vehicle underscore that their disagreement over the vehicle was directly related to their fees dispute under the legal services agreement. In response to Singh's demand that Molnar return the vehicle to Singh, Molnar wrote, "[Y]ou gave me the car as a partial payment for your outstanding legal fees and invoices in the Pardal matter, in fact, it was your idea . . . ." (Italics removed.) Singh replied, "I never agreed to give you a car as a

15

partial payment or a payment in trade. . . . I was disputing [all] your . . . bills."

Singh's reliance on *Loube v. Loube* (1998) 64 Cal.App.4th 421 is misplaced. There, the plaintiffs sued their former lawyers for malpractice based on the lawyers' failure to allege a specific amount of damages in the complaint, causing the trial court to limit damages in a default judgment to the court's jurisdictional minimum. (*Id.* at pp. 424-425.) The Court of Appeal affirmed the judgment for the attorneys but rejected the attorneys' claim for fees under the retainer agreement, concluding "[t]he narrowly drawn attorney fee provision . . . providing for the payment of fees for an action brought to enforce the terms of the parties' agreement, cannot be read as a contractual agreement to award fees in an action brought for legal malpractice." (*Id.* at p. 430.) As discussed, the legal services agreement provided for the recovery of attorneys' fees for an action to declare the parties' rights under the agreement.[9] Further, in contrast to a typical

---

[9] Molnar argues the holding in *Loube, supra*, 64 Cal.App.4th 421 was rejected by the Court of Appeal in *Lockton v. O'Rourke* (2010) 184 Cal.App.4th 1051. In *Lockton*, the court held the defense attorneys could recover the fees they incurred in defending against a legal malpractice claim brought by their former client who alleged the attorneys failed to preserve his claims, based on an attorney fee provision allowing for recovery of fees incurred "to prosecute or defend" an action to enforce the retainer agreement. (*Lockton*, at pp. 1070, 1076.) The court contrasted the fees provision to the narrowly-drafted provision in *Loube*, explaining, "Based on the broad language of the fee clause, we conclude that [client] agreed to pay [lawyers] for the value of the time spent by attorneys in that firm to prosecute or defend an action based on the attorney-client relationship created

16

legal malpractice case that alleges failure of the attorney to provide competent legal services, Singh's claim against Molnar for taking the vehicle arose directly from the parties' dispute about contractual payment obligations under the legal services agreement.

*Exxess Electronixx v. Heger Realty Corp.* (1998) 64 Cal.App.4th 698, also relied on by Singh, is distinguishable. In *Exxess*, a commercial property owner sued a tenant for breach of the lease, and the tenant filed a cross-complaint for fraud and breach of fiduciary duty against the property broker, alleging the broker concealed defects in the property known before execution of the lease. (*Id.* at pp. 702-703.) The broker later sought fees pursuant to the lease agreement, which, similar to the legal services agreement, provided for the recovery of fees by a prevailing party in "an action or proceeding to enforce the terms" or "declare rights" under the agreement. (*Ibid.*) The Court of Appeal concluded the broker was not entitled to recover its fees because the tenant's claims for fraud and breach of fiduciary duty were not claims to enforce the terms of the lease or to declare rights under it, but instead "were premised on a duty that arose without regard to the terms of the lease and before the lease existed." (*Id.* at p. 711.) By contrast, whether Singh agreed to transfer the vehicle to Molnar as payment for fees was at the heart of Singh's claims and central to whether Singh owed Molnar money (and how much) under the legal services agreement.

---

by the retainer agreement." (*Id.* at p. 1076.) Neither *Loube* nor *Lockton* informs our analysis of the attorney fee provision here given the different language and nature of Singh's tort claims.

17

## DISPOSITION

The order awarding Molnar attorneys' fees is affirmed. Molnar is to recover his costs on appeal.

FEUER, J.

We concur:

PERLUSS, P. J.

McCORMICK, J.[*]

---

[*] Judge of the Orange County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.